[Civ. No. 23452.   First Dist., Div. One.   Aug. 4, 1967.]

ROBERT E. LEE, Plaintiff and Appellant, v. LELAND S. MURPHY et al., Defendants and Respondents.

Paul V. Giudice for Plaintiff and Appellant.

John H. Smissaert, Ryersen & Comstock and Jack Ryersen for Defendants and Respondents.

MOLINARI, P. J.—In this action brought by plaintiff for an injunction to restrain defendants, Leland Murphy and Sonoma County Abstract Bureau, the beneficiary and trustee, respectively, under a deed of trust upon real property owned by plaintiff, from proceeding with a foreclosure sale of this property pursuant to the deed of trust, plaintiff appeals from a judgment dissolving the temporary restraining order issued by the trial court and denying plaintiff relief in any form under his complaint. Plaintiff contends that the trial court erred in its determination in that as a result of Murphy's receipt of insurance proceeds resulting from a destruction of the subject property by fire, plaintiff is not in default upon the note which was secured by the subject deed of trust. In addition, plaintiff claims that he is entitled to receive the interest on the insurance proceeds held by Murphy.

On August 30, 1963, coincident with the purchase by plaintiff from defendants, Leland and Olive Murphy, of certain improved real property situated in Guerneville, plaintiff executed a promissory installment note in favor of Leland Murphy in the amount of $78,000 plus interest. According to the terms of the note, the amount due thereunder in the form of both principal and interest was payable as follows: $6,000

on September 1, 1964, $7,000 on September 1, 1965, and $7,500 on September 1 of each succeeding year until such time as the balance had been paid. In addition, the note contained an acceleration clause which provided that upon default in the payment of any installment, the whole amount of principal and interest would become due immediately at the option of the holder. As security for the payment of this note plaintiff executed a deed of trust upon the subject property naming Murphy as beneficiary. Included among the provisions of this deed of trust was the following: "A. To protect the security of this Deed of Trust, Trustor agrees: . . . 2. To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice."

Thereafter plaintiff obtained policies of fire insurance on the improvements on the subject property, these policies naming Murphy the beneficiary thereof as his interest may appear. On October 19, 1963, before the first installment on the promissory note became due, a fire destroyed the improvements on plaintiff's property. On December 10, 1963, the insurance companies which had insured the property paid plaintiff $65,000 for the fire loss, plaintiff in turn endorsing the $65,000 check in his favor to Leland and Olive Murphy.

When the first installment on the promissory note became due on September 1, 1964, plaintiff failed to make the payment. Accordingly, on November 5, 1964 Leland Murphy notified plaintiff that he was in default under the deed of trust and that Murphy would proceed with a sale of the subject property pursuant to the terms of the deed of trust. Thereupon this action ensued.

The issue in this case revolves around the question of whether plaintiff, as of September 1, 1964, was in default upon the note which was secured by the deed of trust upon this property. At the heart of this question is the legal issue which we are called upon to decide, namely, whether Murphy, in electing to retain the insurance proceeds resulting from the fire loss which plaintiff suffered in connection with his

Guerneville property, was obligated to apply these proceeds to the first maturing installments of the note, thus relieving plaintiff from any default which he would have incurred in the absence of the application of the insurance proceeds to the note. It is plaintiff's claim that by retaining the insurance proceeds, Murphy became obligated to apply this money upon the subject note as installments thereon became due. Murphy, on the other hand, takes the position that he is entitled to use these proceeds "to reduce the amount of the indebtedness" but that the proceeds are "not to be credited to the annual payments under the note as they become due."

There is a considerable body of law in the United States concerning the appropriate disposition of insurance proceeds where the mortgagor obtains insurance on the mortgaged property under a policy containing a clause making any loss due him payable to the mortgagee as his interest may appear. In such a situation the policy is regarded as having been at its inception assigned to the mortgagee with the consent of the insurance company, and it is the general rule that the proceeds of such insurance, when received by the mortgagee, amount to a payment on the mortgage debt, extinguishing it *pro tanto*. (11 A.L.R. 1295, 1296 and cases cited therein; 36 Am.Jur., Mortgages, § 333, pp. 855, 856; 59 C.J.S., Mortgages, § 448, pp. 696, 698; see *Woody* v. *Lytton Savings & Loan Assn.*, 229 Cal.App.2d 641, 645, 646 [40 Cal. Rptr. 560]; *Alexander* v. *Security First Nat. Bank*, 7 Cal.2d 718, 722 [40 Cal.Rptr. 560].) Where the mortgage debt has not matured at the time the insurance proceeds are paid, the general rule is that in the absence of the mortgagor's consent the mortgagee has no obligation or right to apply the insurance proceeds to the mortgage debt prior to maturity of the debt. Accordingly, the mortgagee must hold the money until some part of the mortgage debt is due and may thereafter apply the money to the extinguishment of the debt as fast as it falls due. (11 A.L.R. 1295, 1301-1302; 36 Am.Jur., Mortgages, § 339, p. 859; 2 Jones, Mortgages, § 1164, p. 637.)[1]

These various rules as to the appropriate disposition of insurance proceeds apply, however, only in the absence of a

---

[1]Some jurisdictions, however, take the position that the insurance money which the mortgagee receives stands in the place of the destroyed property and need not be applied to that part of the mortgage debt which is due, but may be held as security for the whole. (36 Am.Jur., Mortgages, § 339, p. 859; 11 A.L.R. 1295, 1301.) This is not the California rule. (See *Alexander* v. *Security-First Nat. Bank, supra,* at p. 722; *Woody* v. *Lytton Savings & Loan Assn., supra,* at p. 645.)

specific agreement between the mortgagor and the mortgagee concerning the disposition of such insurance proceeds. (11 A.L.R. 1295, 1303; 36 Am.Jur., Mortgages, §§ 331, 339, pp. 854, 859; 59 C.J.S., Mortgages, § 448, pp. 696, 698; see *Woody* v. *Lytton Savings & Loan Assn., supra,* 229 Cal.App.2d 641, at pp. 644-645.) Thus, where the mortgagor and the mortgagee have entered into an agreement concerning the disposition of such insurance proceeds, such agreement is controlling as to the specified method of disposition. ▮ Accordingly, in the instant case, since the deed of trust which plaintiff executed in favor of Murphy contained a specific provision relating to the disposition of insurance proceeds payable upon a loss due to fire, we need concern ourselves solely with that provision in order to determine the appropriate disposition of the fire insurance proceeds in the instant case. As we read that provision of the deed of trust it gave Murphy two alternative methods of disposing of insurance proceeds. First, this money "may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine" and second, in the alternative, the money "may be released to Trustor." Such language clearly precludes Murphy from holding the insurance funds as security for payment of the entire indebtedness. (*Woody* v. *Lytton Savings & Loan Assn., supra,* at pp. 648-649; *Atlantic & Gulf Properties, Inc.* v. *Palmer* (Fla.App.) 109 S.2d 768, 769.)

In the instant case the record reveals that of the two alternatives provided for under the deed of trust, that is, releasing the insurance proceeds to plaintiff or applying them to the indebtedness secured by the deed of trust, Murphy chose the latter course. We note, moreover, that although at the time the insurance proceeds were paid to Murphy no part of the subject note had become due, we are not confronted in this case with the question of an unconsented-to application of insurance proceeds to an unmatured debt because under the terms of the deed of trust plaintiff specifically authorized Murphy, at his election, to apply the proceeds to the installment note which was secured by that deed of trust. (See *Woody* v. *Lytton Savings & Loan Assn., supra,* 229 Cal.App. 2d 641, at p. 648.)

Although the parties appear to be in agreement that under the terms of the deed of trust Murphy properly elected to apply the insurance proceeds to the note due him from plaintiff, the heart of their disagreement relates to the manner in which Murphy is to apply these insurance proceeds to this

note. As we have indicated, plaintiff takes the position that this money is to be applied to the installments on the note as they become due. Murphy, on the other hand, relies on that provision of the deed of trust which refers to the application of the insurance proceeds "in such order as Beneficiary may determine" and argues that based upon that language he is not obligated to apply the insurance proceeds to the installments on the note as they become due.

Although Murphy has not clearly indicated to us the manner in which he deems himself entitled to apply the proceeds, the determination made by the trial court is essentially a proper one, that is, that Murphy is entitled to apply the proceeds so as to reduce the total indebtedness by the amount of the proceeds with the remaining unpaid balance of the note to be paid by plaintiff according to the terms of the note. This determination does not depend, however, as contended by Murphy, upon the language in the subject provision of the deed of trust to the effect that he could apply the insurance proceeds "in such order as the Beneficiary may determine." The pertinent language, applicable to the facts of this case, is that which provides that "The amount collected under any fire . . . policy may be applied by Beneficiary upon any indebtedness secured hereby . . . ." Accordingly, in the present case, since there was only one indebtedness, that is, the sum of $78,000 plus interest, payable in the stated installments, when Murphy elected to apply the insurance proceeds in the sum of $65,000 to such indebtedness the debt was reduced *pro tanto* thusly: when the $65,000 was received by Murphy on or about December 10, 1963, the indebtedness in the sum of $78,000 was forthwith reduced to $13,000 plus the interest that had accrued on $78,000 from the date of the execution of the promissory note on August 30, 1963. The said sum of $13,000 plus the accrued interest then became the balance of the principal of the note which plaintiff was required to pay according to the tenor of the note. Accordingly, when plaintiff failed on September 1, 1964 to pay the first installment of $6,000 due on account of that sum he was in default and Murphy was entitled to give the notice of default which is the subject of this action.

█ Alluding once again to the language in the deed of trust authorizing Murphy to apply the insurance proceeds "upon any indebtedness secured hereby and in such order as Beneficiary may determine," we do not interpret this language to mean that where there is only one indebtedness, the

beneficiary must notify the trustor as to the manner in which he intends to apply the proceeds to the indebtedness.[2] To the contrary, as we interpret the pertinent provisions of the deed of trust in the light of the applicable principles, the indebtedness is reduced *pro tanto* and *eo instanti* upon the receipt of the proceeds and the election by the beneficiary to apply the proceeds to the indebtedness. Any notification of the manner in which the beneficiary intends to apply the proceeds would be an idle act because the proceeds would have already been applied and the indebtedness extinguished *pro tanto*. As we interpret the language quoted above in this paragraph, it means that if there is *more than one* indebtedness secured by the deed of trust, then the beneficiary may determine the order or manner in which the several indebtednesses are to be extinguished by the insurance proceeds.[3] In such a case it would be incumbent upon the beneficiary to notify the trustor as to the manner in which he intended to apply the insurance proceeds. In the instant case since there was only one indebtedness which could be reduced *pro tanto* by the insurance proceeds, it is clear that no such notification was necessary.

In view of the conclusion reached by us that the insurance proceeds were applied *pro tanto* to the indebtedness, there is no merit to plaintiff's claim that he is entitled to interest on the insurance proceeds. These proceeds did not constitute a trust fund held as security for the indebtedness, but, as we have already pointed out, they constituted a payment on account of the indebtedness. Such payment, moreover, redounded to plaintiff's favor since it substantially reduced the principal on the note upon which plaintiff himself was obligated to pay interest.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

---

[2]The trial judge noted in his memorandum opinion that by giving notice of default and preparing to sell under the deed of trust, Murphy evidenced an intention to apply the payment *pro tanto* to the total debt and to leave the note to be performed according to its terms for the unpaid balance.

[3]In *Woody* v. *Lytton Savings & Loan Assn., supra*, 229 Cal.App.2d at pp. 648-649, a case involving a provision similar to that in the instant case, we find the following quotation from 5 Couch on Insurance 2d: "If a policy is made payable to a mortgagee as his interest may appear, and his interest is only to the extent of his lien secured by notes, it constitutes an appropriation in advance of the policy proceeds to the satisfaction of the notes, and neither party can, without the consent of the other, disregard such application of payment, even though one of the notes was not due at the time the payment was made." (§ 29.66, p. 351.)