**Donovan PEARSON, Plaintiff-Appellant,**

**v.**

**FIRST NATIONAL BANK OF MARTINSVILLE, Defendant-Appellee.**

**No. 1–379A98.**

Court of Appeals of Indiana, Fourth District.

July 30, 1980.

Rehearing Denied Sept. 8, 1980.

Frank E. Spencer, Indianapolis, for plaintiff-appellant.

Harold A. Harrell, William K. Steger, Bunger, Harrell & Robertson, Bloomington, for defendant-appellee.

CHIPMAN, Judge.

Plaintiff/mortgagor Donovan Pearson (appellant) brought this action against defendant/mortgagee First National Bank (appellee) for breach of contract and interference with contractual relationships. At the close of the plaintiff's evidence, in a trial to a jury, the Bank moved for a directed verdict (judgment on the evidence) arguing the plaintiff failed to prove a breach of any contractual obligation and failed to prove damages. The Bank's motion was granted and this appeal follows.

Affirmed.

## ISSUES

The primary issue for our consideration is whether the court properly withdrew this case from the jury and entered judgment on the evidence for the defendant Bank. A directed verdict may only be granted under Trial Rule 50 where, after viewing the evidence in a light most favorable to the plaintiff, the trial court finds a total absence of evidence on an essential element of the plaintiff's case. *Johnson v. Mills*, (1973) 157 Ind.App. 620, 301 N.E.2d 205. The trial court may not weigh evidence; the motion should be granted only when the evidence is without conflict and is susceptible of but one reasonable inference in favor of the moving party. *Sullivan v. Baylor*, (1975) 163 Ind.App. 600, 325 N.E.2d 475.

Two other relatively minor issues are raised concerning procedural irregularities.

## FACTS

The following facts were established by plaintiff Pearson during his case-in-chief: On December 1, 1973, Pearson purchased a restaurant building from a Mr. and Mrs. Gene Lewis. As part of the purchase transaction Pearson agreed to assume two mortgages in favor of First National and the Small Business Administration which had unpaid principal balances of $144,143.51 and $41,406.15. These obligations were evidenced by two promissory notes. Pearson also agreed to insure the premises under the following provision of the loan agreement:

"A. 'Borrower' specifically warrants by acceptance of this commitment, that:

. . . . .

2. That it will continue in force for the duration of this loan *with a loss payable in favor of the bank and the Small Business Administration as their interests may appear*:

a. A policy of fire and extended coverage and vandalism insurance in an amount adequate to protect the assets owned by the 'borrower.'

. . . .

c. Business interruption insurance in an amount sufficient to cover the required debt service on this loan." (emphasis added)

The restaurant was heavily damaged by a fire on May 27, 1974. Pearson testified he would have asked $250,000 for the building before the fire, but that it was probably worth only $50,000 in its burned-out condition.

Donald Reed, an insurance adjuster, asked Pearson to have three reconstruction estimates done by general contractors. These estimates were completed, and on or about June 17, 1974, Reed told Pearson he would recommend to the various insurance companies involved the $85,773.48 reconstruction estimate submitted by a Mr. Fleming of the J. B. Construction Company.

The next morning, reconstruction was begun.

On the second day of work, Fleming approached Pearson and asked how and when his construction firm would be paid. Pearson responded that he assumed the money would be held in escrow by First National and that Fleming should discuss the matter with the bank if he wanted to know more. Fleming met that same day with a Mr. McIntosh from the bank who informed Fleming no payment would be forthcoming until all reconstruction work had been completed. Later that afternoon, Pearson returned to the bank with Fleming at which time they were told the insurance proceeds were not going to be put back into the building, but were going to be retained by the bank and applied to the outstanding mortgage debt. The bank officials told Pearson they would work with him on a new construction loan at a higher interest rate if he so desired. Pearson became quite upset and told Fleming to pull his crew off the building until the entire matter could be cleared up.

The gist of the plaintiff's claim is that the Bank breached its contract when it refused to make the fire insurance proceeds available for reconstruction of the restaurant and, instead, chose to apply the proceeds to reduce the outstanding mortgage debt on the property. He categorizes the Bank's offer to negotiate a new construction loan at a higher rate of interest as "tortious misconduct." The Bank simply responds by stating there was no evidence to show anything but full compliance with the terms and conditions of the contract documents forming the basis of the parties' relationship.

## I. JUDGMENT ON THE EVIDENCE

 Generally speaking, a mortgage agreement is a contract, and as such, the mortgagor and mortgagee are free to enter into an agreement concerning the disposition or application of insurance proceeds in the event of a loss. *Lee v. Murphy*, (1967) 253 Cal.App.2d 205, 61 Cal.Rptr. 174; *Terraqua Corporation v. Emigrant Industrial Savings Bank*, (1948) 75 N.Y.S.2d 453, 190 Misc. 474, *aff'd* 76 N.Y.S.2d 610, 273 App. Div. 254, *app. den.* 78 N.Y.S.2d 378, 273 App.Div. 885; Appleman, Insurance Law and Practice, § 3386 (1970). There has been considerable litigation concerning the appropriate disposition of insurance proceeds where, as in the present case, the mortgagor obtains insurance on a mortgaged property under a policy containing a clause making any loss payable to the mortgagee "as his interest appears." The well established rule is that where insurance is made payable to the mortgagee "as his interest may appear," the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt, holding the surplus, if any, after extinguishment of his debt for the benefit of the mortgagor. *Silverstein v. Central Furniture Co.*, (1959) 131 Ind.App. 170, 162 N.E.2d 690; *New Hampshire Insurance Company v. American Employers Insurance Company*, (1972) 208 Kan. 532, 492 P.2d 1322; *Durbin v. Allstate Ins. Co.*, (1972) La.App., 267 So.2d 779, *application denied* 263 La. 621, 268 So.2d 678; *Hadjis v. Anderson*, (1970) 260 Md. 30, 271 A.2d 350; *Better Valu Homes, Inc. v. Preferred Mutual Insurance Company*, (1975) 60 Mich.App. 315, 230 N.W.2d 412; *Hartford Fire Ins. Co. v. Associates*, (1975) Miss., 313 So.2d 404; *Hartford Fire Ins. Co. v. Bleedorn*, (1940) 235 Mo.App. 286, 132 S.W.2d 1066; *Appleman, supra*, § 3405.

"An open loss payable clause does not . . . operate as a separate contract between the mortgagee and the company; but the policy remains one between the company and the owner, with a right of collection vested in the mortgagee by appointment. The words 'as their interest may appear' refer to debts owing the insured, and mean that the insurer will pay the mortgagee to the extent of his lien at the time of loss. The terms refer, therefore, not to an interest in the property insured, but to payment of the loss; and not the mortgagee's interest in the property, but the interest which he has in the indebtedness."

*Appleman, supra,* § 3401 at 286. Properly viewed then, an open mortgage loss payable clause signifies the insurance proceeds will be applied to the mortgage debt. As the court stated in *T. P. Leiden v. General Motors Acceptance Corp.,* (1975) 136 Ga. App. 268, 220 S.E.2d 716:

> "[W]here a mortgage agreement requires the mortgagor to carry insurance for the protection of the mortgagee and the policy carries a loss payable clause in favor of the mortgagee . . . the parties have effected a pre-appropriation of insurance proceeds to payment of the mortgage debt . . .."

220 S.E.2d at 718.

It is not clear to what extent the mortgagee may apply the insurance proceeds to the payment of a mortgage debt which is not due at the time he receives the proceeds of insurance. There is authority to the effect that proceeds must be held by the mortgagee and applied to the mortgage debt as it falls due. In the case of *Crone v. Johnson,* (1966) 240 Ark. 1029, 403 S.W.2d 738, the court held insurance proceeds should have been applied to mortgage installments which fell due after the loss, thereby preventing default. The court stated, "principles of justice permit a court of equity to protect the debtor against an inequitable acceleration." 403 S.W.2d at 740. *Accord, Hadjis v. Anderson, supra.*

It has been held specifically that a mortgagee named in a loss payable clause will prevail over a mortgagor who desires to use the money to repair. *First National bank v. Martin,* (1937) 289 Ill.App. 624, 7 N.E.2d 637; *Hartford Fire Insurance Company v. Bleedorn,* (1940) 235 Mo.App. 286, 132 S.W.2d 1066; *Terraqua Corporation v. Emigrant Industrial Savings Bank, supra* (applying New York statute); *State ex rel. Squire v. Royal Insurance Company,* (1938) 58 Ohio App. 199, 16 N.E.2d 342. We find only one case in which an opposite conclusion was reached: *Schoolcraft v. Ross,* (1978) 81 Cal.App.3d 75, 146 Cal.Rptr. 57. *Schoolcraft* involved an action by the purchasers of a home against the beneficiary of a deed of trust for damages they incurred because of the beneficiary's refusal to permit the rebuilding of the house after it had been destroyed by fire. The beneficiary had the express option to either apply the insurance proceeds to the balance of a note secured by the deed of trust, or to permit the proceeds to be used for reconstruction of the premises. The court held this option should have been exercised in good faith, and that it was not exercised in good faith where there was no evidence plaintiffs were unable or unwilling to continue making payments on the property, and where there was no evidence that the security was impaired by the fire. It is not at all clear what the court was referring to when it said the security was *not impaired,* for the evidence showed the house in question was completely destroyed by fire.

■ It therefore appears plaintiff Pearson failed to establish he had any contractual right to have the insurance proceeds applied to reconstruction of the restaurant. The interpretation of an integrated written contract which contains no ambiguity is a question of law for the court. *U.S. Fidelity & Guaranty Co. v. Baugh,* (1970) 146 Ind.App. 583, 257 N.E.2d 699. The provision calling for insurance "payable to the bank and the S.B.A. as their interests may appear" are words of art which have acquired a definite meaning in the law, and are entitled to an interpretation consistent with that meaning, i. e., the mortgagee is entitled to the proceeds of the policy to the extent of his interest in the mortgage debt and may apply the proceeds to the outstanding mortgage debt as it falls due.

Even if this court were inclined to adopt an implied element of good faith as did the court in the *Schoolcraft* case, the plaintiff's evidence still appears to be lacking in several respects. Plaintiff introduced no evidence as to whether he was current in his mortgage payments at the time of the fire. There was no evidence the Bank ever told plaintiff the proceeds would be available for reconstruction of the restaurant, or that the Bank authorized reconstruction to commence. There was no evidence the Bank knew reconstruction had begun before the

meeting with Fleming. As to the issue of damages, plaintiff introduced no evidence as to the mortgage balance at the time of the fire. There was no evidence as to the amount of insurance proceeds actually paid to the Bank and credited to the plaintiff's account. There was no evidence as to how and when the mortgages were retired.

 If evidence fails to create a *reasonable* inference of an ultimate fact, but merely leaves the possibility of its existence open for surmise, conjecture or speculation, then there is no evidence of probative value as to that ultimate fact and a Trial Rule 50 motion should be granted. *McKeown v. Calusa*, (1977) Ind.App., 359 N.E.2d 550. In addition to the lack of evidence showing a breach of contract, tortious conduct or bad faith on the part of the Bank, the jury in this case was left to speculate on the amount of damage suffered by the plaintiff. What was the amount he lost when his business did not re-open? What were his profits prior to the fire? How much money did the insurance companies pay on the fire loss? All this information was missing from the plaintiff's case.

Therefore, we hold the trial court's granting of the Trial Rule 50 motion should be affirmed for two reasons:

1) Plaintiff introduced no evidence to show the Bank breached any contractual obligation or engaged in any tortious conduct, and

2) Plaintiff failed to introduce a reasonable amount of evidence as to his damages.

## II. PROCEDURAL IRREGULARITIES

 There are two issues raised by the appellant involving procedural irregularities which followed the withdrawal of this case from the jury. First, on July 20th the trial court sustained the defendant's Trial Rule 50 motion by making the following entry:

"Parties appear in person and by counsel and jury heretofore sworn appears. Court being duly advised now sustains defendant's motion for directed verdict as in T.R. 50 on defendant's first ground. There being insufficient evidence to support plaintiff's remaining contentions of breach of contract, all other questions being derivations, cause is withdrawn from the jury. Jury is discharged. *Judgment on the findings.*" (emphasis added)

Plaintiff argues he was denied a fair trial by irregularity in the proceedings in that the court withdrew the case from the jury and entered "Judgment on the findings" with no findings having been made, and no findings by the court being authorized by any statute or rule.

In reference to the second issue, plaintiff filed a motion to correct errors on September 18, 1978, alleging as one error the fact that judgment had been entered "on the findings." On September 22, 1978, the trial court entered a formal judgment in the following words:

### "JUDGMENT ENTRY

The plaintiff, Donovan Pearson, by his counsel, H. Richard Miles, having rested his case-in-chief herein, and the defendant, First National Bank of Martinsville, by its counsel, Harold A. Harrell, in open court having made its oral motion for judgment on the evidence pursuant to Rule T.R. 50(A)(1), which Motion is in the words and figures following:

### (H.I.)

And the Court having reviewed the testimony and exhibits offered and admitted into evidence during the presentation of plaintiff's case, and having heard argument of respective counsel upon said Motion, and having taken said Motion under advisement, and now being duly advised, now FINDS:

1. Plaintiff's Complaint, as later merged in the Pre-Trial Order herein proceeded on alternative theories that plaintiff was damaged as a result of defendant's breach of certain contractual obligations owed to him, or that plaintiff was damaged becuase [sic] defendant tortiously [sic] interfered with certain contractual rights or prospective advantages of the plaintiff.

2. Plaintiff failed to offer any competent evidence of probitive [sic] value or reasonable inference therefrom, not constituting mere conjecture or speculation, that he suffered any compensible [sic] damages under any of his alternative theories for relief, the allegations of which are otherwise accepted as true for purposes of consideration of this Motion.

3. Plaintiff, having failed to offer any competent evidence of probitive [sic] value or reasonable inference thereform upon his damages, which is an essential element of his claim or claims, this matter should accordingly be withdrawn from the jury in its entirety, and defendant's oral Motion for Judgment on the Evidence should be sustained.

IT IS THEREFORE ORDERED: 1. This matter is hereby withdrawn from the jury's consideration in its entirety; 2. Defendant's Motion for Judgment on the Evidence at the close of plaintiff's case-in-chief is sustained, and judgment for the defendant entered accordingly; 3. Costs accured [sic] in this action are assessed against the plaintiff.

The trial court granted appellant an additional sixty days to file a supplemental motion to correct errors. Plaintiff now complains this second judgment entry inaccurately sets forth the rulings of the court in that the court actually withdrew the case from the jury finding no evidence of breach of contract, not on the theory of no evidence of damages.

Appellant does not show how he was prejudiced by any of the procedural irregularities he complains of. Obviously, the court's original judgment entry was meant to say "judgment on the evidence." The entry specifically mentions Trial Rule 50. It is quite clear the trial court considered the lack of evidence of breach of contract *and* damages in granting judgment on the evidence, and relied upon his authority under Trial Rule 50 to do so. Furthermore, appellate review of a ruling on a motion for judgment on the evidence is subject to the same standards which govern the trial court on that motion; our task is to determine whether the evidence justified submission of the claim to the jury, *Hendrickson & Sons Motors Co. v. OSHA*, (1975) 165 Ind. App. 185, 331 N.E.2d 743, and is *not* limited to a review of the considerations that moved the trial court. *Heiny v. Pennsylvania R. Co.*, (1943) 221 Ind. 367, 47 N.E.2d 145. Appellant presents no cogent argument as to why the lower court's ruling should be reversed because of the irregularities complained of. Therefore, the decision of the trial court is affirmed.

MILLER, P. J., and YOUNG, J., concur.