**Eugene P. CORNETT, Appellant (Respondent Below),**

v.

**Adaline M. CORNETT, Appellee (Petitioner Below).**

**No. 1–680A155.**

Court of Appeals of Indiana, First District.

Dec. 1, 1980.

Rehearing Denied Jan. 7, 1981.

---

G. Daniel Kelley, Jr., Indianapolis, for appellant; Ice, Miller, Donadio & Ryan, Indianapolis, Phillips B. Johnson, Johnson & Eaton, Versailles, of counsel.

James P. Seidensticker, Jr., Daniel C. Emerson, Indianapolis, for appellee; Bose, McKinney & Evans, Indianapolis, Greeman, Kellerman & Lindenmeyer, Batesville, of counsel.

ROBERTSON, Presiding Judge.

Eugene P. Cornett (Eugene) appeals from the dissolution of marriage decree entered by the trial court, in which Eugene received somewhat more than fifty percent (50%) of the parties' assets, while his wife of ten years, Adaline M. Cornett (Adaline) received the remainder. On appeal, Eugene argues that the trial court: failed to follow the dictates of *Ind.Code* 31–1–11.5–11; erred in excluding certain evidence; erred in its disposition of certain joint venture property, and; erred in including certain property in the marital estate. We affirm.

The record reveals that Eugene was a licensed public accountant who practiced for about 28 years. In 1965, he hired Adaline, who was also a licensed public accountant. By the time of their marriage, in 1969, Adaline had risen to the level of office manager. Adaline continued to work during their marriage until 1975, but received no salary for her work. During their marriage, the net income produced by the practice, increased from $40,119 in 1969, to a high of $77,797 in 1974. The practice and an office building were sold in 1976. At the time of the separation, $172,049 was still owed to Eugene from the sale of the practice.

The Cornetts also worked to develop farm investment parcels during the marriage and entered into joint venture agreements with some of Eugene's clients whereby Eugene would generally put up 10% of the purchase price but would receive 25% of the profit, if any, when the property was sold. In return for the increased share of the profit, the Cornetts did not charge their partners for their accounting services. In addition, for his services in managing these parcels, Eugene received a management fee of three percent (3%) of the gross income realized on the crops from the land. With the exception of one parcel, Eugene and Adaline took title to the parcels jointly.

In 1975, some "lake property" was purchased in Ripley County which was to be used for Eugene's retirement. Eugene and Adaline moved there in 1977 from their home in Hamilton County. For purposes of the dissolution, the lake property was valued at $250,000.

The trial court was requested to make specific findings of fact and conclusions of law pursuant to Indiana Rules of Procedure, Trial Rule 52. Of the eleven findings of fact, four deal with marriage property and assets. Of the three conclusions of law, the court declared in Conclusion # 2 that:

> The net value of the property of the parties as of the date of final separation should be divided between Petitioner and Respondent with each party to own the income from the property awarded to him or her, except that Respondent shall earn the management fee on properties where he retains an interest.

The court in its final decree then divided the various assets of the marriage.

Eugene first argues that the findings of fact, conclusions of law, or final disposition were contrary to the evidence, contrary to law, and an abuse of discretion. Basically, the findings are attacked as not being sufficient to support the court's single conclusion (quoted above) as to the awarding of the marital property. Eugene contends that because the evidence revealed he brought so much more into the marriage than Adaline, and because the award created a negative cash flow of $80,000 for him, while creating a positive cash flow of $35,-

000 for Adaline in 1980, that the court abused its discretion and that the division was not "just and reasonable."

■ It is clear that when findings of fact and conclusions of law are filed, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Indiana Rules of Procedure, Trial Rule 52(A). Findings are construed liberally and in conjunction with each other on appeal to support the judgment, and a reviewing court will accept the findings made by the trial court if they are supported by evidence of probative value. *In re Marriage of Miles*, (1977) Ind.App., 362 N.E.2d 171. Although we find the findings of fact and conclusions of law to be at best minimal, when viewed in context of the evidence within the record, we cannot say the court's division was clearly erroneous.

■ "Clearly erroneous" means that although there is evidence to support the trial court's decision, the record leaves the reviewing court with the definite and firm conviction that a mistake has been committed. *Young v. Bryan*, (1977) Ind.App., 368 N.E.2d 1. Following our review of the record, we are not left with that conviction. The evidence was conflicting and subject to various interpretations. Consequently, deference must be given to the trial judge due to his opportunity to judge the demeanor and credibility of the witnesses. T.R. 52.

The disposition of property is governed by *Ind.Code* 31–1–11.5–11, which provides in essence that:

the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to the final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, . . .

In determining what is just and reasonable the court shall consider the following factors:

(a) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

(b) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(c) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(d) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(e) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

■ In challenging the court's disposition of the marital assets, Eugene contends the trial court did not properly consider all of the statutory factors and argues that specific findings should be required on each of the factors. We do not agree. There is no mandate in T.R. 52 that a trial judge state how or why he found and concluded the way he did. *Colonial Life & Accident Ins. Co. v. Newman*, (1972) 152 Ind.App. 554, 284 N.E.2d 137. Also, it is a basic tenet, that on appeal, this court presumes the court below followed the law and considered the statutory factors in making its decision. *Dahlin v. Dahlin*, (1979) Ind.App., 397 N.E.2d 606; *In re Marriage of Patus*, (1978) Ind.App., 372 N.E.2d 493.

Eugene can point to no instance where the trial judge clearly disregarded any of these factors, and we are not persuaded that the evidence is so totally without conflict to permit such an inference to be drawn from the court's disposition of the assets. The mandate of the court is to determine a "just and reasonable" disposition of the marital assets. Given the growth of the accounting practice and the investment program during the years of the

marriage, as well as the conflicting testimony in the record concerning the relative value of each party's contribution to this growth, we do not believe the trial judge in any way abused his discretion in making the disposition. The division of the property was clearly not against the logic and effect of the facts and circumstances before the court. *Dahlin v. Dahlin, supra; Wilcox v. Wilcox,* (1977) Ind.App., 365 N.E.2d 792.

■ Eugene next contends that error occurred when the court excluded certain testimony concerning his indebtedness and cash flow situation. While we agree that the portion of the transcript cited by Eugene would appear to support his conclusion that the trial court ignored the degree of his indebtedness, and hence, abused its discretion, we believe any error in sustaining an objection at this point was harmless. Indiana Rules of Procedure, Trial Rule 61. It is well settled that when an error did not affect the substantial rights of the complaining party, such error will be considered harmless and not be grounds for reversal. *Easton v. State,* (1972) 258 Ind. 204, 280 N.E.2d 307.

According to the dictates of IC 31-1-11.-5-11, in making its disposition of marital assets, the court considers property acquired by each spouse up until the final separation of the parties. In *In re Marriage of Davis,* (1979) Ind.App., 395 N.E.2d 1254, the court considered the effect of a bonus the wife would receive after the final separation. This court determined that the bonus should not be included in the marital assets subject to division, but that the bonus could properly be considered in making a determination as to what was a just and reasonable manner for the parties' total assets to be distributed. Applying that rationale to the present case, we agree with Eugene's conclusion that liabilities incurred after the separation, for the purpose of paying off obligations incurred during the marriage, should be considered. We, however, differ from Eugene's assumption that the court did not consider his obligations since it excluded testimony concerning his cash flow at one particular point in the trial.

A review of the record reveals that the court questioned Eugene concerning payments on various parcels and was aware that at the end of the year Eugene would be required to make sizeable payments. We believe that the court's questioning, combined with the other evidence in the record was sufficient to apprise the judge of Eugene's financial situation and cash flow problems. Consequently, the exclusion of evidence to that effect which was presented earlier during the trial was not an abuse of the court's discretion, and error, if any, was harmless.

■ Eugene next alleges that the trial court abused its discretion by altering the joint venture agreements. The court required that an escrow account be established to control income and payments from the various parcels and that both Adaline and Eugene were required to act together on any transaction dealing with the real estate. Eugene contends that this makes it impossible for him to fulfill his management agreements with the other joint venture partners. We do not agree.

In dealing with the joint venture property which Eugene and Adaline owned as tenants by the entireties with third persons, the court directed that their interest would not be as tenants in common along with the escrow arrangement described above. Eugene was awarded in his own right the management fee of three percent (3%). Eugene cites *Wilhelm v. Wilhelm,* (1979) Ind.App., 397 N.E.2d 1079, for the proposition that dissolution contemplates a final separation of the parties and a final division of their property. While this was in part the legislative intent, *Wilhelm* dealt with a "property settlement judgment" that was contingent upon the wife not remarrying. Here, there is no such contingency. The rights of the parties were determined by the final distribution of the property and subsequent unilateral conduct cannot alter those rights.

We also fail to see how Eugene will be unable to fulfill his management agreements. It is in the best interest of both

Eugene and Adaline to attend to the demands of the property as quickly as possible to assure that the property is operated as efficiently and productively as possible. Given the conflicting evidence in the record as to the contributions made by each party in the joint venture investments, we cannot say that the trial court abused its discretion in dividing the joint venture property as it did.

Finally, Eugene alleges the trial court erred in including certain property in the marital estate. Specifically, this contention concerns the profit that may be realized on the sale of the property. Although the Cornetts paid only ten percent (10%) of the purchase price, they were to receive twenty-five percent (25%) of the profits, if any, when the parcels were sold. In exchange, the Cornetts would not charge for their accounting services in connection with the management of the property. Eugene contends that the 15% increase (25% less 10%) will not accrue unless he continues the accounting function. Consequently, the increase is not vested and therefore not a proper consideration to be taken into account when dividing the property. Eugene relies on *Wilcox v. Wilcox*, (1977) Ind. App., 365 N.E.2d 792, and *Henderson v. Henderson*, (1980) Ind.App., 401 N.E.2d 73.

In *Henderson*, the trial court gave the husband an award that could only be satisfied when certain real estate was sold, and the wife had the sole power to decide when to sell. We there determined that it was error for the trial court to delegate to one of the parties the power to decide when to divide the property, as the division of property is the function of the trial court. Here, apparently, either party can perform the accounting function since both parties are licensed public accountants.[1]

In *Wilcox*, this court did not allow the inclusion in the marital estate a future salary to be earned by the husband discounted to present value. We declared that the husband could not be said to have a vested

interest in his future earnings. Here, the joint venture agreement required the Cornetts to provide accounting services for the joint venture property. If those services were provided, they would then receive 25% of the profits when the parcels were sold. Although it would be possible for these profits to be viewed as not vested, it is just as reasonable for the trial court to assume that the interest in the profit was vested, subject to divestment should the Cornetts fail to provide the agreed to accounting services.

■ Given the fact that both parties can perform the accounting services and that the values of the property at the time of the dissolution are not in dispute, we cannot say that the trial court abused its discretion in including the profits as a part of the marital estate. Now, both parties have an economic incentive to assure that the contractual obligations are performed.

Finding no error in the proceedings below, the trial court is in all matters affirmed.

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.

1. The joint venture agreements were not made a part of the record on appeal, and apparently were not introduced into evidence at the trial.