**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF GARY, Appellant (Plaintiff, Counter defendant below),**

v.

**Edward E. STONE and Rosalie G. Stone, Appellees (Defendants, Counter Plaintiffs below),**

**Roseland Construction Company, Inc., Fidelity Investment, Inc., Appellees (Defendants below).**

No. 3–983A286.

Court of Appeals of Indiana, Third District.

Aug. 28, 1984.

Rehearing Denied Nov. 7, 1984.

Glenn S. Vician, George W. Heintz, Borns, Quinn, Kopko & Lindquist, P.C., Merrillville, for appellant.

Don G. Blackmond, Doran, Manion, Boynton, Kamm & Esmont, South Bend, for appellees Edward E. Stone and Rosalie G. Stone.

Thomas C. Sopko, South Bend, for appellee Roseland Const. Co., Inc.

STATON, Presiding Judge.

First Federal Savings and Loan Association of Gary (First Federal) sued Edward and Rosalie Stone (Stones), Roseland Construction Company (Roseland), and Fidelity Investment, Inc. seeking to foreclose on a mortgage it held against Stones' home. Stones counterclaimed against First Federal and its agent which serviced the mortgage, Northern Indiana Mortgage Company (NIMCO), alleging they wrongfully refused tendered mortgage payments. That suit was consolidated with a suit filed by Roseland to foreclose on the mechanic's lien it held against Stones' home. First Federal appeals the trial court's judgment in favor of Stones on the foreclosure complaint, the court's award of certain insurance proceeds to Roseland, and the court's award of compensatory and punitive damages to Stones on their counterclaim.

The following issues are presented for our review:

(1) Whether First Federal timely filed its motion to correct errors;

(2) Whether First Federal waived its right to accelerate the mortgage debt by accepting late payments, and, if not, whether First Federal effectively exercised its right to accelerate the mortgage note;

(3) Whether First Federal forfeited its right to apply insurance proceeds from a fire loss to the mortgage debt by failing to notify the mortgagor of its election before repairs were made to the home; and

(4) Whether the evidence supports an award of compensatory and punitive damages against First Federal.

Affirmed in part; reversed and remanded in part.

Stones purchased a home in 1966. To finance their purchase, they borrowed money from NIMCO and gave NIMCO a mortgage on the home. NIMCO assigned the mortgage to First Federal but continued to service the mortgage as the agent of First Federal. The record indicates throughout 1979 First Federal accepted late mortgage payments from Stones. Stones then failed to make the November, 1979 payment. On December 14, 1979, NIMCO notified Stones that they had an excess in their escrow account and requested permission to use the excess for the December payment. Stones granted that permission.

On December 15, 1979, Stones' home was damaged by fire, and Stones notified their insurer and NIMCO of the loss. At that time the balance due on the mortgage was $5,154. First Federal advised NIMCO that, pursuant to its option under the mortgage, if the loss exceeded $5,000 it would apply the insurance proceeds to the mortgage debt. Not until January 25, 1980 did NIMCO advise Stones of First Federal's election. Unfortunately, repairs to the home had already been completed at a cost of over $7,000. The insuror issued checks for the repairs, but First Federal refused to endorse the checks, preventing them from being cashed by the contractor.

Meanwhile, on January 18, 1980, NIMCO had notified Stones that their mortgage loan payments for November, December, and January were delinquent, and that the February payment was due in thirteen days. NIMCO asked Stones to notify it of their plans to bring the mortgage up to date. On February 1, 1980, Stones tendered the full amount required to bring the mortgage up to date. However, that tender was refused. On February 11, 1980, NIMCO again advised Stones of First Federal's desire for payoff of the loan and invited Stones to come in and discuss the

situation. On March 15, 1980, Stones met with Marly Rydson, the president of NIM-CO. Rydson verbally abused the Stones but offered to plead their cause to First Federal if they would tender a check to bring the loan up to date. Stones tendered their payment, and it also was refused. First Federal then filed its complaint to foreclose the mortgage.

### 1.

### Timeliness of Motion

The Stones contended that First Federal has failed to timely file its motion to correct errors. This case was tried on September 16, 1982. After the close of evidence and arguments, the trial court took the case under advisement. On January 12, 1983, the following docket entry was made:

> "The Court notifies the parties that plaintiff's complaint to foreclose is denied, defendants Stone's [*sic*] counterclaim is granted and Roseland granted. Blackmond and Sopko directed to prepare order for approval."

On February 17, 1983, First Federal filed a praecipe pursuant to Ind.Rules of Procedure, Trial Rule 53.2 requesting the clerk to withdraw the case from the trial judge. On March 30, 1983, the Supreme Court ordered that the jurisdiction of the case remain with the trial judge; it concluded that the trial judge entered his decision on January 12, 1983. On May 31, 1983, the trial court entered its findings and judgment. First Federal filed its motion to correct errors on July 28, 1983.

Stones contend the docket entry of January 12 constituted a final judgment, and First Federal was required to file its motion to correct errors within sixty days. Stones essentially argue that we are compelled to compute the sixty days from January 12, because the Supreme Court found that the January 12 docket entry constituted the entry of the judge's decision. We disagree.

■ TR. 53.2 is obviously designed to provide a remedy for litigants when, after trial, the judge for some reason fails to timely render a decision. The January 12 docket entry shows the judge made his decision and directed Stones' and Roseland's counsel to prepare an appropriate order. The Supreme Court determined the docket entry constituted a "ruling or decision" pursuant to TR. 53.1(C) sufficient to withstand First Federal's request to withdraw the case from the judge. However, it does not necessarily follow that the docket entry constituted a final appealable judgment.

■ A motion to correct errors must be filed within sixty days after the entry of a final judgment. TR. 59(C). A final judgment is one which disposes of all issues as to all parties; it puts an end to the litigation. *Thompson v. Thompson* (1972), 259 Ind. 266, 286 N.E.2d 657; *Hudson v. Tyson* (1978), 178 Ind.App. 376, 383 N.E.2d 66. A decision upon which judgment has not actually been entered is not final. *Cox v. Indiana Subcontractors Ass'n, Inc.* (1982), Ind.App., 441 N.E.2d 222. Further, a judgment which fails to determine damages is not final. *Schenkel v. Citizens State Bank* (1967), 140 Ind.App. 558, 224 N.E.2d 319.

■ Applying these rules to this case, it is apparent the docket entry of January 12 was not a final judgment. First, it is not an entry of judgment. It is merely an entry memorializing the court's notification of the parties of his decision. Second, it does not end the case. The docket entry requires the preparation of a written judgment with findings to be approved by the judge. Third, the docket entry fails to determine damages on Stones' counterclaim. Finally, it is clear the court never intended this entry as an entry of final judgment.

For these reasons we find no merit in Stones' contention that First Federal's motion to correct errors should have been filed within sixty days of the January 12 docket entry. First Federal's motion to correct error was timely filed after the entry of final judgment on May 31, 1983.

## 2.
### Right to Accelerate

First Federal contends the trial court should have granted the relief requested in its foreclosure action. First Federal initially argues the court erroneously found it waived the prompt payment condition by accepting late payments. The mortgage contained a non-waiver clause which provided that a waiver of the option to accelerate the note upon default at one time "shall not constitute a waiver of the right to exercise the [option] at any other time."

■ First Federal correctly points out that this non-waiver clause is effective in preventing acceptance of late payments from operating as a waiver of a subsequent default. *Van Bibber v. Norris* (1981) Ind., 419 N.E.2d 115. Thus, First Federal's acceptance of late payments does not result in a waiver of its right to require prompt payment. Nonetheless, we affirm the trial court's refusal to foreclose on the Stones' mortgage because First Federal waived the default it sued upon by failing to timely exercise its option to accelerate the maturity of the mortgage.

■ The applicable rule is as follows: "[W]here the acceleration of the maturity of a mortgage debt on default is made optional with the mortgagee, some affirmative action must be taken by him evidencing his election to take advantage of the accelerating provision, and ... until such action has been taken the provision has no operation. The exercise of the option should be made in a manner clear and unequivocal, so as to leave no doubt as to the mortgagee's intention." 55 Am.Jur.2d, Mortgages, § 386. In this case, First Federal's agent, NIMCO, advised Stones on January 18, 1980 that they were in arrears and asked Stones to advise it as to their plans to bring the mortgage up to date. On January 25, NIMCO wrote to the Stones the following memo.

"Dear Mr. Stone:

Please find enclosed a copy of a letter from the mortgagee, 1st. Federal Saving and Loan of Gary.

There is also a copy of the letter to Boggs adjustment.

Item # 6 of the mortgage states the mortgagee reserved the option to be paid or restoration.

The mortgage has been in default for some time and they wish is [*sic*] to be paid in full.

Pay off as of 1–31–80 is $5,154.43

s/ Marly Rydson"

First Federal contends this memo constitutes an effective exercise of its option to accelerate the note. However, because the trial court could have found the memo to be ambiguous, we disagree.

■ The first three sentences of the memo refer to the insurance proceeds from the December, 1979 fire and First Federal's desire to use the proceeds to pay off the mortgage. Thus, the fourth sentence, reflecting First Federal's desire to be paid in full could be construed as citing the default as the reason why it wished to apply the insurance proceeds to the loan. Given NIMCO's prior invitation to pay the balance due, and the ambiguity within the memo of January 25, the trial court could have found First Federal failed to clearly declare its election to accelerate the note.

■ Further, even if the note of January 25 were clear, the trial court could have found the effect of that statement nullified by a subsequent invitation to Stones to tender full payment. On March 15, 1980, Stones met with Marly Rydson, the president of NIMCO, to discuss their situation. The trial court found Stones made another tender pursuant to Rydson's instructions. A mortgagee's election to accelerate a note must be *clear and unequivocal*. Rydson's invitation to tender the amount due is binding upon First Federal and negates any effect the letter of January 25, may have had. Having invited another tender, First Federal could not reject that tender and accelerate the note.

■ First Federal also contends the filing of its foreclosure suit constitutes an effective election to accelerate the note.

However, the two tenders made by Stones operate to cut off First Federal's right to accelerate the note for these defaults.

"[A] tender of arrears due on a mortgage containing an acceleration clause, made before the holder of the mortgage has exercised his option to declare the entire amount of the debt due, prevents the exercise of such option."

55 Am.Jur.2d, Mortgages, § 389.

Finally, contrary to the argument of First Federal, Stones' failure to tender their payments into court is of no moment. We agree with First Federal that, generally, to prove a defense of tender in a foreclosure action a person must show:

(1) He made a valid tender of the full amount due; and

(2) The tender has been kept good by paying it into court for the use and benefit of the party entitled to receive it.

*Dunfee v. Waite* (1982), Ind.App., 439 N.E.2d 664, 666. However, in this case our decision is not based upon the Stones' proof of the defense of tender. Rather, we hold that First Federal is not entitled to accelerate the note because it failed to timely and unequivocally exercise its option to declare the debt due. *The acceleration provision has no operation* in this factual setting. Since First Federal had no right to accelerate the note, there was no need for Stones to employ tender as a defense and, thus, no need to tender the money into court.

For these reasons, we affirm the trial court's refusal to accelerate the note and foreclose on the mortgage.

### 3.

### Insurance Proceeds

First Federal next contends the trial court erred in awarding insurance proceeds from the fire loss to Roseland. First Federal contends that pursuant to the terms of Stones' homeowner's insurance policy, and the terms of the mortgage, it is entitled to apply the insurance proceeds against the mortgage debt.

On December 15, 1979, Stones' home was damaged by fire. First Federal immediately notified NIMCO and the insurance carrier of its election to apply the insurance proceeds to the mortgage debt if the repairs would cost more than $5,000. Repairs to the home were completed on January 11, 1980. On January 25, 1980, NIMCO notified Stones of First Federal's intent to apply the insurance proceeds to the mortgage debt rather than to the repairs. First Federal refused to endorse the insurance checks, preventing them from being cashed by Roseland, claiming it was entitled to apply the proceeds against the mortgage debt. Later, Roseland sued to foreclose its mechanic's lien, and that suit was consolidated with First Federal's foreclosure suit. The trial court awarded the insurance proceeds to Roseland in accordance with these findings: 1) First Federal had a duty to notify Stones of its election to apply the insurance proceeds to the mortgage debt; 2) First Federal intentionally failed to notify Stones of its election until after repairs to the homes were completed; and 3) Stones may not be held to the terms of the insurance policy since it was procured by First Federal.

Where a mortgage or insurance policy provides for insurance proceeds to be paid to the mortgagee "as its interest appears", the mortgagee is entitled to the insurance proceeds to the extent of the mortgage debt. *Loving v. Ponderosa* (1983), Ind.App., 444 N.E.2d 896, 906 *(trans. pending); Pearson v. First National Bank of Martinsville* (1980), Ind. App., 408 N.E.2d 166, 170.

In this case, the insurance policy provided for insurance proceeds to be paid to the mortgagee as its interest appears and the mortgage agreement specifically granted the mortgagee the option to apply insurance proceeds to the mortgage debt. Even if Stones are not held responsible for the terms of the insurance policy, they are responsible for the clear provision of the mortgage agreement. When interpreting the mortgage agreement we are bound to give effect to the plain meaning

of the language of the mortgage. *Pisko-rowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838, 846. Had First Federal exercised its option in bad faith, Stones would have grounds to challenge the application of the proceeds to the debt. *See Pearson, supra* at 170–71. However, there is no such evidence in this case. Further, we find no support for the trial court's finding that First Federal had a duty to notify Stones of its election and that First Federal intentionally failed to notify the Stones of its election prior to completion of repairs to the home. As First Federal points out, the terms of the mortgage clearly provide "[N]otice of the exercise of any option granted to the mortgagee herein, or in the note secured hereby, is not required to be given." It is not within the province of a court to make a new contract for the parties or to ignore or eliminate provisions of the instrument. *Merchants National Bank v. H.L.C. Enterprises* (1982), Ind., 441 N.E.2d 509.

■■■■ The terms of the mortgage are clear. First Federal is entitled to apply the insurance proceeds to the mortgage debt and First Federal had no duty to notify the mortgagor of its intention to do so. Stones should have been aware of First Federal's option to apply the proceeds to the mortgage debt. Thus, when they authorized the repair of the home without an assurance from First Federal that the insurance proceeds would be applied to repair the home, they gambled that First Federal would not elect to apply the insurance proceeds to the mortgage debt and lost. Thus, we hold the trial court erred by failing to award the insurance proceeds to First Federal.

### 4.

### Stones' Counterclaim

Stones filed a counterclaim to First Federal's foreclosure complaint alleging First Federal wrongfully refused their tendered mortgage payments. The trial court awarded $11,188.43 in compensatory and $90,000 punitive damages to Stones on that counterclaim.

The relevant portions of the judgment show the trial court found: 1) First Federal had a duty to properly notify Stones of its election to apply insurance proceeds to the mortgage; First Federal's agent willfully failed to do so, and such failure resulted in Roseland's suit against Stones to foreclose its mechanic's lien. 2) Rydson verbally abused Stones in an effort to conceal his failure to notify them of First Federal's election to use the insurance proceeds against the debt. 3) First Federal wrongfully, willfully, and oppressively refused various tenders of mortgage payments which Stones were invited to make. 4) First Federal's mortgage foreclosure suit was without merit and resulted in economic hardship to Stones. 5) As a whole, First Federal's conduct was in bad faith and oppressive, and the public interest will be served by a punitive damage award against First Federal.

First Federal contends these findings and the judgment thereon are not supported by evidence and are contrary to law. We agree.

■■■■ We are mindful of our standard of review on an appeal from a trial to the court. Findings and conclusions of the trial court will be set aside only if they are clearly erroneous. *Matter of Estate of Apple* (1978), 176 Ind.App. 581, 376 N.E.2d 1172. A finding or conclusion is clearly erroneous when review of the record leaves this Court with a definite and firm conviction that a mistake has been made. *Cornett v. Cornett* (1980), Ind.App., 412 N.E.2d 1232.

■■■■ First, with regard to First Federal's failure to promptly notify Stones of their election to apply the insurance proceeds to the mortgage debt, as we concluded above, First Federal had no such duty, and First Federal is entitled to apply the insurance proceeds to the debt. Thus, Roseland's foreclosure on its mechanic's lien was not caused by any illegal act of First Federal. Further, there is no evidence to support the finding that Rydson verbally abused Stones in an attempt to

cover up his failure to notify them of First Federal's election regarding the insurance proceeds. Since Stones were not entitled to notice, Rydson's failure to relay First Federal's election is of no moment.

▮ Second, while the evidence does show Rydson chastized the Stones for consistently failing to make timely mortgage payments, the evidence also shows Rydson offered to make an attempt at convincing First Federal to reinstate the loan and to allow the insurance proceeds to be used for the repairs. On the whole, Rydson's conduct cannot be characterized as malicious or oppressive. Further, even if Rydson verbally abused the Stones, absent physical injury, Indiana law does not provide for recovery of damages for mental or emotional suffering. *Little v. Williamson* (1982), Ind.App., 441 N.E.2d 974; *Indiana Motorcycle Ass'n v. Hudson* (1980), Ind.App., 399 N.E.2d 775.

For these reasons, Stones are not entitled to recover for First Federal's failure to notify them of its election to apply the insurance proceeds to the mortgage debt or for any verbal abuse inflicted by Rydson.

▮ Third, First Federal's refusal of the tenders made by the Stones does not give rise to an action for damages. A refusal of a proper tender operates only as a

"discharge or extinguishment of those things which are accessorial and incidental to the principal obligation, and prevents the addition of any further increment which would otherwise accrue to the unpaid obligation, and ordinarily discharges from further operation any collateral undertakings that may have been given for the better security of the creditor."

*McFarland v. Christoff* (1950), 120 Ind. App. 416, 92 N.E.2d 555, 557.

▮ Fourth, we find clearly erroneous the trial court's award of damages based on its determination that First Federal's foreclosure suit was wholly without merit. We agree with First Federal that it appears the trial court awarded to Stones damages on the theory that First Federal, through its foreclosure action, was guilty of malicious prosecution. This Court has held,

"[t]hat the primary action upon which malicious prosecution is based has terminated in defendant's favor before the commencement of an action for malicious prosecution is necessary for its maintenance... A counterclaim predicated upon malicious prosecution of the action in which such counterclaim was filed should be dismissed...."

*Hunter v. Milhous* (1973), 159 Ind.App. 105, 305 N.E.2d 448, 452–53. Thus, granting Stones' counterclaim on a malicious prosecution theory is improper.

Fifth, Stones argue the trial court could have properly awarded attorney fees to them pursuant to the "obdurate behavior" exception to the general rule that, absent statute or contract, attorney fees are not recoverable as damages. We disagree.

▮ Only when a party's conduct is "vexatious and oppressive in the extreme" will an award of attorney fees be appropriate under the obdurate behavior exception. *Saint Joseph's College v. Morrison, Inc.* (1973), 158 Ind.App. 272, 302 N.E.2d 865, 871. In this case, we find no evidence of vexatious conduct by First Federal. First Federal sought to foreclose on Stones' mortgage. Stones alleged First Federal wrongfully refused their tenders, but Stones had been in default and it was necessary for First Federal to refuse Stones' tenders in order to pursue a foreclosure action. Stones also alleged they were entitled to notice of First Federal's election to apply the insurance proceeds to the mortgage debt. First Federal, on the other hand, relied on contract provisions which indicated otherwise. On the whole, the evidence shows the disputes of the parties were bona fide; thus, an award of attorney fees under the obdurate behavior exception would be inappropriate in this case.

▮ Finally, because there is no basis upon which Stones are entitled to recover compensatory damages against First Federal, punitive damages may not be assessed

against First Federal. *Hahn v. Ford Motor Co., Inc.* (1982), Ind.App., 434 N.E.2d 943, 954; *Baker v. American States Inc. Co.* (1981), Ind.App., 428 N.E.2d 1342, 1351.

The trial court's judgment in favor of Stones on First Federal's foreclosure complaint is affirmed. The court's award of the insurance proceeds to Roseland; and the award of compensatory and punitive damages against First Federal are reversed and the cause remanded for proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

HOFFMAN and GARRARD, JJ., concur.