Debra Ann **BEESON**,
Petitioner (Appellant),

v.

William H. **BEESON**,
Respondent (Appellee).

No. 29A02–8802–CV–78.

Court of Appeals of Indiana,
Second District.

May 30, 1989.

T. Reg Hesselgrave, Indianapolis, Douglas D. Church, Noblesville, for appellant.

John W. Donaldson, Donaldson, Andreoli & Truitt, Lebanon, Michael A. Howard, Pearce & Howard, Noblesville, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Petitioner-appellant Debra Ann Beeson (Debra) appeals from a decree of dissolution claiming the trial court abused its discretion in its award of child support, failed to provide for spousal maintenance, awarded inadequate attorneys fees, and should not have modified a stipulation of the parties concerning visitation rights of William H. Beeson (William).

We affirm.

## FACTS

The facts most favorable to the judgment reveal that Debra and William were married on May 10, 1975, and that Debra petitioned for dissolution on November 1, 1985.

Debra and William first met in 1970 in Bloomington, Indiana, at Indiana University. In 1972, Debra received her associates degree from the University and William entered Indiana University's School of Medicine in Indianapolis. Debra worked in Danville, Illinois, for a short time, and joined William in Indianapolis in the spring of 1973. Debra was employed by Lazarus Department Stores working in retail sales while William continued his medical education.

William's parents paid his tuition and other school related expenses, and he worked part-time in medical related jobs. In 1976, William completed medical school and began a five-year residency specializing in head and neck surgery. Debra continued to work and regularly received promotions and salary increases. Their incomes were put into the marital pot and financed both of their living expenses. William chose to specialize in facial plastic and reconstructive surgery, and obtained a fellowship for further training in Birmingham, Alabama. In 1981, William moved to Alabama for one year while Debra remained in Indianapolis to continue her employment. After a year, William returned to Indianapolis and began to build his medical practice.

For the next several years William established himself as a successful plastic surgeon, and Debra continued her advancement at Lazarus. In 1984, William's practice had gross receipts of $426,537 and a profit of $135,318. In July, 1984, Debra terminated her employment at Lazarus because she was pregnant. At that time, she was earning $28,000 per year. The only child of the marriage, Michelle, was born on January 17, 1985. After the birth, William separated from Debra and Michelle and provided $2,000 per month for support. William continued to build his medical practice, and Debra volunteered for the Pan–Am Games held in Indianapolis. While a volunteer, Debra established contacts that she believed would be beneficial for her future career. Their 1985 adjusted gross income was $163,580.

Debra filed a petition for dissolution on November 1, 1985. Throughout the pendency of the divorce, Debra remained unemployed while William's practice continued to grow. William's 1986 adjusted gross income was $411,591. A final hearing was held on September 8 and 9, 1987.

On October 26, 1987, the trial court entered a decree that granted joint custody of Michelle to Debra and William, and provided that Michelle reside with Debra, awarded $1,000 per month in child support, ordered William to pay all of Michelle's medical expenses, ordered William to pay an additional $2,500 of Debra's attorneys fees (he had already paid $2,000), and divided the marital property. William received the equity in his medical practice, various personal items, and two vehicles, all of which could reasonably be valued at approximately $30,000. Debra received the marital residence, subject to its mortgage, all of the household goods, the furniture and jewelry in her possession, various checking, savings, and IRA accounts, an automobile, and

her inheritance from her father's estate. While the value of her inheritance was not calculated, as it was subject to her mother's life estate, the value of the remaining property awarded to Debra was approximately $105,000. Therefore, not including her inheritance, Debra received approximately 78 percent of the marital property, while William received 22 percent. The decree also contained a visitation schedule for William, but made no mention of spousal maintenance for Debra.

## ISSUES

Debra presents four issues for our consideration:

1. Whether the trial court abused its discretion by only awarding $1,000 per month for child support?

2. Whether the trial court erred in failing to provide for spousal maintenance?

3. Whether the total award of only $4,500 for attorneys fees constituted an abuse of discretion?

4. Whether the trial court abused its discretion by altering the parties' stipulation concerning visitation?

## DECISION

ISSUE ONE—Did the trial court abuse its discretion by only awarding $1,000 per month in child support?

PARTIES' CONTENTIONS—Debra claims that in light of William's substantial income, the award of only $1,000 per month for child support was an abuse of discretion. William responds that the evidence supports a determination that Michelle's needs were satisfied by the award.

CONCLUSION—The trial court's award was supported by the evidence.

Debra presents a unique question in Indiana case law, i.e., whether a trial court can abuse its discretion by awarding inadequate child support. Typical appeals involving child support raise the issue of whether the trial court has awarded an excessive amount for the support of the child. The issue before us now is not whether the trial court *could* have ordered William to pay more, but rather, it is whether the trial court's award was supported by the evidence.

Frequent references are made to the principle that child support is within the sound discretion of the trial court, and such determinations will not be disturbed on appeal unless against the clear logic and effect of the facts and circumstances before the court, *Porter v. Porter* (1988), Ind. App., 526 N.E.2d 219, *trans. denied; Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240, *trans. denied,* and the necessary corollary that, reviewing the determination of child support, we do not reweigh the evidence or judge the credibility of witnesses. *Helms v. Helms* (1986), Ind.App., 490 N.E.2d 1153.

■ Debra has highlighted William's considerable income in her allegation that the trial court awarded inadequate child support. Our focus is different. When awarding child support, it is the *needs of the child* that are of primary concern. *Hunter v. Hunter* (1986), Ind.App., 498 N.E.2d 1278; *Halum v. Halum* (1986), Ind. App., 492 N.E.2d 30, *trans. denied; Geberin v. Geberin* (1977), Ind.App., 360 N.E.2d 41.

■ Ind.Code 31–1–11.5–12(a) (1988) is the authority. It provides in pertinent part:

"In an action pursuant to Section 3(a), 3(b), or 3(c) of this chapter, the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct, after considering all relevant factors including:

(1) the financial resources of the custodial parent;

(2) the standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

(3) the physical or mental condition of the child and the child's educational needs; and

(4) the financial resources and needs of the noncustodial parent."

It is the financial resources of both parents, as well as the standard of living the child would have enjoyed had the marriage not been dissolved that are the relevant inquiries. *Porter, supra; Allen v. Allen* (1985), Ind.App., 477 N.E.2d 104; *Geberin, supra.* So in order to establish that the trial court abused its discretion, Debra must show that the child support award was illogical or unreasonable in light of the evidence presented at trial concerning the standard of living Michelle would have enjoyed had Debra and William not separated, as well as the financial conditions of both Debra and William.

■ The primary evidence presented at trial to demonstrate Michelle's needs was a financial disclosure by Debra itemizing monthly household expenses. *Record* at 985–87. The disclosure, however, clearly indicates that it reflects the needs of *both* Michelle and Debra.[1] Debra has failed to demonstrate that *Michelle's* needs were approximately $3,000 per month, as she has contended. Also, the record reveals that during the pendency of the divorce, Debra received $1,000 per month in child support in addition to $1,000 per month in spousal maintenance. *Record* at 483. Nor did Debra present evidence that the standard of living Michelle enjoyed during the pendency of the divorce was lower than the standard of living she *would* have enjoyed had Debra and William not separated. So the trial court could reasonably conclude that Michelle's standard of living was substantially the same as it would have been had Debra and William not separated.

Turning to other relevant considerations, both Debra's and William's financial conditions were substantial. Debra received over $100,000 of the marital property, including a $10,000 savings account and a $15,000 individual retirement account. *Record* at 923. Further, Debra had earned an associates degree from Indiana University, had demonstrated an ability to succeed in gainful employment, and had made valuable personal contacts while she volunteered at the Pan American Games. *Record* at 844, 890–93, 941. William's financial condition was also quite considerable. His after-tax income was approximately $20,000 per month, with approximately $3,500 per month in expenses. *Record* at 1096. He was ordered to pay $1,000 per month in child support, as well as Michelle's medical, dental and optical expenses. *Record* at 752.

While the trial court *could* have ordered William to pay more, the amount the trial court did order William to pay was not illogical or unreasonable in view of all the facts and circumstances.

ISSUE TWO—Did the trial court abuse its discretion by failing to provide Debra with spousal maintenance?

PARTIES' CONTENTIONS—Debra argues that because of William's high income and her lack of gainful employment, she is deserving of spousal maintenance. William counters that the evidence does not demonstrate she is in need of maintenance.

CONCLUSION—The trial court properly exercised its discretion in denying an award of spousal maintenance.

■ The trial court did not abuse its discretion by failing to provide Debra with spousal maintenance. The award of spousal maintenance, pursuant to IC 31–1–11.5–11(e),[2] is wholly within the discretion of the

---

1. On cross-examination, Debra admitted the amounts indicated in the disclosure for some items, such as food and clothing, reflect the needs of both her and Michelle. *Record* at 989–90. Other items, such as telephone, automobile and entertainment expenses, were not discussed, but it is clear they are not all Michelle's expenses.

2. IC 31–1–11.5–11(e):
    "(e) A court *may* make the following findings concerning maintenance:

    .     .     .     .     .

(2) If the court finds a spouse lacks sufficient property, including marital property apportioned to that spouse, to provide for that spouse's needs and that spouse is the custodian of a child whose physical or mental incapacity requires the custodian to forego employment, the court *may* find that maintenance is necessary for that spouse in an amount and for a period of time as the court deems appropriate.
(3) After considering:

court. *Rump v. Rump* (1988), Ind.App., 526 N.E.2d 1045, *trans. denied; In Re Marriage of Dillman* (1985), Ind.App., 478 N.E.2d 86. Again, our review of such awards is limited to examining the trial court's determination to see if it is clearly against the logic and effect of the facts and circumstances before it. *Dillman, supra.*

The record reveals that Debra was 34 years old at the time of the divorce and in good health. She earned an associates degree from Indiana University, and had chosen not to seek further education before she married William. *Record* at 941. She had a successful career in retail sales over a period of 10 years. She made valuable personal contacts by volunteering at the Pan American Games which could be expected to lead to gainful employment. *Record* at 890. She was given over 75 percent of the marital assets.

Given these facts and circumstances, it was not an abuse of discretion to fail to award Debra any spousal maintenance. Debra does not contend that the trial court misinterpreted the law, or that it ignored any of the statutory considerations. Her's is a plea for us to reweigh the evidence in her favor. This we cannot do. *See Rump, supra.* There is a rational basis for the trial court's denial of spousal maintenance.

ISSUE THREE—Did the trial court abuse its discretion by only awarding a total of $4,500 for Debra's attorneys fees?

PARTIES' CONTENTIONS—Debra contends the amount of the award, representing approximately one-quarter of her attorney's fees, was insufficient in view of William's considerable income. William responds that the trial court has full discretion in the award of attorneys fees.

(A) the educational level of each spouse at the time of marriage and at the time the action is commenced;
(B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;
(C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

CONCLUSIONS—The trial court did not abuse its discretion.

■ In its determination of attorneys fees, the trial court must consider the factors that bear on the reasonableness of the award. *Baker v. Baker* (1986), Ind. App., 488 N.E.2d 361. Debra was given over $100,000 of the marital estate, including a savings account and an IRA totalling $25,000. She does not argue that the court failed to consider any relevant factor. She simply asks us to reweigh the evidence in her favor. There is no abuse of discretion.

ISSUE FOUR—Did the trial court abuse its discretion when it altered the parties' stipulation of visitation?

PARTIES' CONTENTIONS—Debra claims the trial court was bound by the stipulation. William counters that the trial court must approve or adopt the parties' agreement to be bound.

CONCLUSION—There is no abuse of discretion.

Debra really presents no cogent argument nor cites any authority in support of her position that the trial court could not alter the stipulation. See Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). In any event we see no error.

■ Visitation is an element of the custody order. *Fox v. Fox* (1984), Ind.App., 466 N.E.2d 789, *trans. denied.* When determining the custody and visitation rights of the parties, the best interests of the child is paramount. *See Matter of Paternity of Joe* (1985), Ind.App., 486 N.E.2d 1052; *In Re Marriage of Larkin* (1984), Ind.App., 462 N.E.2d 1338; *Marsico v. Marsico* (1972), 154 Ind.App. 436, 290 N.E.2d 99. A stipulation cannot place re-

(D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;
a court *may* find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree." (Emphasis supplied.)

strictions upon a court's duty to protect the best interest of a child. 83 C.J.S. *Stipulations* § 17 (Supp.1988).

When awarding custody, the crucial consideration for the trial court is the best interest of the child, not the desires or claims of the parents. *Wright, supra.* The trial court has wide discretion in its determination of custody or visitation rights, and we will only reverse if a manifest abuse of discretion is demonstrated. *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749. The visitation rights given to William are identical with the parties' stipulation except that their stipulation provided that William would have Michelle on Christmas Eve, and Debra would have her on Christmas day, and would otherwise alternate holidays. *Record* at 1559. The order provided Debra and William would have Michelle on alternate holidays, but made no special provision regarding Christmas. *Record* at 752. Debra fails to demonstrate that the visitation rights were not in Michelle's best interest, or that the order was illogical or unreasonable.

Lastly, Debra has petitioned this court for an award of appellate attorney's fees and other expenses pursuant to Ind.Code 31–1–11.5–16. Following *Scheetz v. Scheetz* (1987), Ind.App., 509 N.E.2d 840, this matter is remanded to the trial court for determination of appellate attorney's fees, and the judgment of the trial court is affirmed.

Judgment affirmed.

NEAL, J., concurs.

SULLIVAN, J. concurs as to Issues I, II, III, and IV; but dissents from the decision to remand for appellate attorney's fees.