Gregory Allen COX, Appellant–
Petitioner,

v.

Sandra L. COX, Appellee–Respondent.

No. 18A02–9001–CV–52.

Court of Appeals of Indiana,
Third District.

Oct. 31, 1991.

Donald H. Dunnuck, Dunnuck, Teagle & Hunt, Muncie, for appellant-petitioner.

Joan R. Schliebner, Steven D. Murphy, DeFur, Voran, Hanley, Radcliff & Reed, Muncie, for appellee-respondent.

HOFFMAN, Presiding Judge.

This appeal arises out of a final decree, entered by the Delaware Superior Court No. 2, dissolving the marriage of appellant-petitioner Gregory Allen Cox (Greg) and appellee-respondent Sandra L. Cox (Sandy). After a hearing, the trial court entered an order dissolving the marriage of the parties and awarding custody of the children to Sandy. The trial court later entered a final order, with findings of fact and conclusions of law, which distributed and divided the marital property, and created child support obligations for Greg. The final order was subsequently amended, in response to Greg's Motion to Correct Errors.

Greg then filed a Petition for Modification of the support order. Shortly thereafter, he commenced an appeal of the court's amended final order, in which he attacked both the property distribution and the original child support order.

After a hearing on the Petition for Modification, the special judge entered an order modifying the support order. Greg then commenced an appeal of the modification order, under the same appellate cause number as the first appeal.

Pursuant to Ind.Appellate Rule 2(C)(2), a conference with the parties was held on October 18, 1990. On October 19, 1990, an order was entered which consolidated by stipulation the issues of both appeals under a single cause number. That order limited the issues of this case to those that follow:

1. The propriety of the award for spousal maintenance vis-a-vis distribution and division of property;

2. Whether the trial court abused its discretion with respect to the division and distribution of property; and

3. Whether the order modifying child support was erroneous.

Evidence relevant to the appeal discloses that Greg and Sandy were married on September 20, 1980. There were two children born to the marriage. The parties are self-employed farmers. Greg filed his Petition for Dissolution on January 12, 1989.

Prior to the marriage, Greg had purchased farming equipment and a certain farm, which the parties refer to as the "Greenhouse Farm." The only asset which Sandy brought to the marriage was an automobile. However, before their marriage, Sandy assisted Greg in the farming of the Greenhouse Farm and other acreage that Greg had rented.

After the marriage, the parties acquired the "Cox Farm" and the "Johnson Farm," as well as a great deal of farm equipment and personal property. During this period, the farming operation expanded from 400 acres under cultivation to over 1,900 acres. The resulting gross income of the parties rose in a generally steady fashion throughout the marriage.

Both parties worked in the farming operation during the marriage. In the early years of the marriage, Sandy worked with Greg in the fields. Later, after the arrival of the children, Sandy assumed the primary role of child care and therefore her direct participation in the farming chores declined, though she maintained bookkeeping responsibilities.

The total net value of the marital property to be divided was $409,710.91. The net value of the trial court's award to Sandy was $179,030.00. Her award included the Johnson Farm, an automobile, and other items of personal property. Greg's award, the remainder of the marital estate, included the Cox Farm, the Greenhouse Farm, and all of the farm equipment. The net value of Greg's award, $230,680.91, reflected all of the debts of the parties, including the mortgage on the Johnson Farm. Additional facts appear as needed.

■ The first issue turns on Greg's contention that the trial court made an award of maintenance to Sandy. Greg points to the following paragraph of the trial court's final order, as indicating an award of maintenance:

"a. The Respondent Sandra L. Cox should have set over to her the Johnson Farm (appraised at $150,000.00, but bearing a mortgage of $80,136.87), and the Petitioner Gregory Allen Cox shall pay said mortgage and hold respondent Sandra L. Cox harmless therefrom; respondent's, Sandra L. Cox's right to reliabilative (sic) maintenance is calculated into this award of realty[.]"

Greg argues that the court's award of maintenance is reversible error, as it is completely unsupported by any findings of fact or conclusions of law consistent with the requirements of IND.CODE § 31-1-11.5-11(e) (1988 Ed.)

IND.CODE § 31-1-11.5-11(e) clearly specifies a limited set of circumstances in which a trial court may appropriately make an award of maintenance. If the foregoing language constituted an award of maintenance, a remand for further findings consistent with the statute would be appropriate. However, the award of the Johnson

Farm to Sandy was not one of maintenance.

■ Greg's arguments are premised on the assumption that the court's use of the term "maintenance" is determinative of the issue. That is, because the court's order described the award of the Johnson Farm to Sandy as including the right to maintenance, the award is, *ipso facto*, one of maintenance. Such is not the case. In making a determination as to whether an award is one of maintenance, the "use of the label 'maintenance' is but one factor to be considered" by the reviewing court. *In re Marriage of Buntin* (1986), Ind.App., 496 N.E.2d 1351, 1354, *trans. den.*

In *Buntin,* the issue was whether certain payments awarded to the wife in a dissolution property settlement were "maintenance" and subject to modification, or part of the property settlement and not subject to modification. The section of the property settlement containing the husband's obligation to make the payments to the wife was entitled "Maintenance, Education and Counseling." Relying on the section heading, the trial court in *Buntin* determined that the payments were maintenance and modified the amount of the payments, based on the changed circumstances of the wife. The Court of Appeals reversed, determining that the payments were part of the property settlement and not maintenance. A similar conclusion is warranted here.

The factors specified by *Buntin* as indicating an award of maintenance are:

"the designation as maintenance; provisions terminating the payments upon the death of either party; payments made from future income; ... provisions for termination upon remarriage; ... provisions calling for modification based upon future events; and payments for an indefinite period of time. [Citations omitted.]"

*Id.* at 1354. A property settlement is indicated when:

"the payments are for a sum certain payable over a definite period of time; ... there are no provisions for modification based on future events; the obligation to make payments survives the death of the parties; ... the provisions call for interest; and the award does not exceed the value of the marital assets at the time of dissolution. [Citations omitted.]"

*Id.*

Similar to the trial court's approach in *Buntin,* Greg's argument overly focuses on the use of the word "maintenance." None of the *Buntin* factors apply to the award of the Johnson Farm to Sandy, except the language indicating that her right to maintenance was calculated into the award. The award did not call for a modification based on future events or termination upon Sandy's remarriage; the award will survive the death of the parties; and the award has no relationship to Greg's future income. Considering the value of the marital estate and the distribution made by the trial court as a whole, the award of the Johnson Farm to Sandy was unquestionably an integral part of the property division and distribution, not maintenance.

Whatever belief the trial judge held as to Sandy's right to rehabilitative maintenance, it does not change the objective character of the award. There was no award of maintenance, and therefore no error.

■ Next, Greg contends that the property distribution represents an abuse of the trial court's discretion, as the distribution is contrary to the evidence and contrary to law. A trial court's division of the marital estate is governed by IND.CODE § 31-1-11.5-11(c) which provides as follows:

"(c) The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time of the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property."

■■■ Subject to the statutory presumption that an even distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court. On review, this Court may neither reweigh the evidence nor assess the credibility of witnesses. Rather, the Court may consider only the evidence most favorable to the trial court's disposition. Furthermore, the trial court's disposition is considered as a whole, not item by item. Reversal is appropriate only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Euler v. Euler* (1989), Ind.App., 537 N.E.2d 554, 556.

■■ When, as is the case here, findings of fact and conclusions of law are filed by the trial court, such findings will be accepted if they are supported by evidence of probative value. On appeal, such findings are to be construed liberally and in conjunction with each other to support the judgment. *Cornett v. Cornett* (1980), Ind.App. 412 N.E.2d 1232, 1235, *trans. den.* Moreover, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind.Trial Rule 52(A).

"Clearly erroneous" means that, although there is evidence to support the trial court's decision, the record leaves the reviewing court with the firm conviction that a mistake has been committed. *Ind. & Mich. Elec. v. Terre Haute Indus.* (1987), Ind.App., 507 N.E.2d 588, 596–597, *trans. den.* (1988), Ind., 525 N.E.2d 1247.

The net worth of the marital estate was $409,710.91. Sandy received property valued at $179,030.00 as her share of the net estate. Greg received the remainder of the marital estate, $230,680.91. A calculation of the property division using these figures results in an approximately 55% share to Greg and 45% share to Sandy. On various grounds, Greg argues that the trial court's distribution was an abuse of discretion, in that an appropriate distribution would have resulted in a substantially larger award to him, as a matter of law.

Our review of the trial court's decision as to the property distribution does not leave us with a firm conviction that a mistake was committed. The evidence was conflicting, and subject to differing interpretations. Therefore, we must defer to the trial judge's opportunity to judge the demeanor and credibility of the witnesses. T.R. 52. When the trial court's findings of fact and conclusions of law are viewed in the context of the probative evidence in the record, that the court's distribution was not clearly erroneous.

The final order held that Greg should hold Sandy harmless on all of the parties' debts, including the mortgage on the Johnson Farm which was awarded to Sandy. Greg argues that the trial court, in coming to its decision as to distribution, erroneously ignored the substantial debt load placed on Greg. Greg's argument is an invitation to reweigh the evidence which must be declined.

Greg's award included two of the parties' three farms and all of the farm equipment. Greg did acquire a heavy debt load with his award, but he also acquired the economic means to deal with it. The court's distribution in this regard is not against the logic and effect of the facts and circumstances before it.

■■ Greg also contends that it is readily apparent that Sandy actually received a good deal more than one-half of the net

equity of the marital estate, when proper consideration is taken of certain expenses of the farming operation. Greg argues that the trial court erroneously ignored these expenses in determining the net worth of the marital estate.

█ The net worth of the marital estate was found by the trial court to be $409,-710.91. This figure was determined by a stipulation of the parties. Parties entering into a stipulation are conclusively bound to the facts so stipulated. A party cannot properly challenge facts on appeal to which it has stipulated below. *Wittwer v. Wittwer* (1989), Ind.App., 545 N.E.2d 27, 29. There was no error in the trial court's finding of net worth as consistent with the stipulation.

Greg also argues that the actual award to Sandy was improperly enhanced by the trial court's error in ignoring the substantially greater net worth that Greg brought to the marriage. Greg does not dispute the court's finding that Sandy brought $10,-400.00 to the marriage. However, Greg specifically attacks, as unsupported, the trial court's finding that Greg brought no more than $95,200.00 of net worth to the marriage.

Evidence in the record supports the trial court's finding as to Greg's net worth. Six months before the marriage, Greg had estimated his own net worth to be only $85,-329.00. There was sharply conflicting evidence as to whether certain farm equipment was purchased by Greg from his mother immediately before, or after the marriage. Deferring to the trial court's superior vantage point on the testimony, the court's finding as to Greg's net worth was not clearly erroneous.

█ The trial court's findings indicate that Greg brought $84,800.00 more in net worth to the marriage than did Sandy. Such a disparity can be discounted where, as here, the marital property is increased during married life through the efforts of both parties. *In re Marriage of Osborne* (1977), 174 Ind.App. 599, 605, 369 N.E.2d 653, 656. Here the joint participation by Greg and Sandy in the farming operation, before and after the marriage, resulted in

growth of the business during the marriage. Sandy's contributions in maintaining the home and caring for the children are also relevant to the court's inquiry. *Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240, 1244, *trans. den.* As to the parties' relative net worth brought to the marriage, it cannot be said that the trial court's distribution was against the logic and effect of the facts and circumstances before it.

Greg further complains that the trial court improperly admitted evidence of his future income. Greg has not cited this Court to any authority indicating that the admission of the evidence was error. Further, Greg has not shown how this evidence played a role in the trial court's distribution of property and therefore how he was prejudiced by the admission of the evidence. Our own review of the record reveals no instance in which the trial court made use of the evidence of Greg's future income. No error occurred.

█ Finally, Greg points to the trial court's conclusion that Greg should be awarded the growing crops on the Johnson Farm, and that the crops should be valued at $47,421.54. Greg argues that this conclusion is error because there is no factual basis in the record for the court's conclusion as to the value of the crops.

The award was made in the form of an amendment to the final order, in response to Greg's Motion to Correct Errors. The finding as to the net marital estate was not amended, and therefore the award of the Johnson Farm crops was in addition to the property division. He could not have been harmed by the value of the crops awarded to him, regardless of their actual value. When an error does not affect the substantial rights of the complaining party, such error will be considered harmless and not grounds for reversal. *Cornett, supra.*

As noted by the parties, the property division does not appear to be precisely equal. IND.CODE § 31-1-11.5-11(c) imposes a presumption that an equal division of property is just and reasonable. In *Euler, supra,* 537 N.E.2d at 556-557, and in

*In re Marriage of Davidson* (1989), Ind. App., 540 N.E.2d 641, 645–646, *reh. den.*, this Court determined that in the absence of specific findings to the contrary the term "equal" means precisely equal.

█ As noted by the trial court, determination of the parties' assets and income with the measure of exactitude required by *Euler* and its progeny is hampered by the nature of the parties' self-employed status as farmers. An operating loan with a $300,000.00 line of credit used for personal and business expenses, large depreciation deductions, income from crops planted yet not sold at the time of the dissolution, and tax advantages peculiar to farming are all factors which complicate a precise division. Difficulty in determining the precisely equal division of property should not cause a trial court to abandon precise calculations made from specific findings as to an exact value for each item considered. However, where, as here, exact amounts are determined and short of ordering all assets sold and the proceeds divided equally, the court has endeavored to fairly and nearly equally proportion the property, the deviation from absolute equality should be deemed inconsequential.

█ In *Kirkman v. Kirkman* (1990), Ind., 555 N.E.2d 1293, 1294, our supreme court determined that while the statutory presumption of equality must be followed absent evidence that the equal division would be unjust or unreasonable, "insubstantial deviations from precise mathematical equality" will not compel express trial court findings. The deviation here was insubstantial.

█ Finally, in the original final order, Greg was ordered to pay $250.00 per week in child support and $1,600.00 per year in a clothing allowance for the children. In the support modification order, Greg was ordered to pay $230.00 per week in child support, as well as pay all of the children's medical expenses. Greg contends that the modification order is erroneous and represents an abuse of the trial court's discretion, in that the court improperly applied the Indiana Child Support Guidelines to the facts of this case.

In general, child support is within the sound discretion of the trial court. Such determinations will not be disturbed on appeal unless they are against the clear logic and effect of the facts and circumstances before the court. In reviewing a determination of child support this Court will not reweigh the evidence or judge the credibility of witnesses. *Beeson v. Beeson* (1989), Ind.App., 538 N.E.2d 293, 296.

As noted, specific findings of facts and conclusions of law were entered. Therefore, the trial court's decision may not be set aside unless it was clearly erroneous.

T.R. Rule 52(A);

*Ind. & Mich. Elec. Co., supra.*

█ On review, it is the financial resources of both parents, as well as the standard of living the children would have enjoyed had the marriage not been dissolved, that are the relevant inquiries. When awarding child support, the needs of the child are paramount.

*Beeson, supra.*

*See* IND.CODE § 31–1–11.5–12(a) (1987 Supp.).

In reaching its decision, the trial court was faced with the problem that neither Greg nor Sandy, as self-employed farmers, have wage incomes which allow for a precise use of the Indiana Child Support Guidelines. Although the trial court concluded that the guidelines were to be applied to this case, the court's determination was limited by the nature of the evidence before it. In such circumstances, an expectation of mathematical precision by the reviewing court would be an exercise in futility and we will not so indulge ourselves.

Nevertheless, Greg contends that the evidence before the trial court clearly shows that Greg had a negative income in 1989, and based on his report of personal expenses, the most income that should be imputed to him is $22,000.00. Therefore, given the $22,000.00 figure that he advances as a correct estimation of his income, and the income imputed to Sandy by the court, Greg argues that he was ordered to pay 200% more in child support than the

guidelines specify. Hence, Greg argues, the court misapplied the law and the modification order was clearly an abuse of its discretion.

■ The trial court's findings, which are supported by the record, paint a different picture than the one presented by Greg. They indicate that Greg had large economic resources available to him. For example, the court found that Greg's 1989 federal tax return did show a net loss of $56,-675.00, but that this figure reflected $115,-411.00 of depreciation. The court correctly concluded that depreciation is not a deduction from weekly income for purposes of calculating child support. The guidelines specifically exclude depreciation. *See* Ind. Child Support Guideline 3(A), Commentary.

■ The court also found that Greg had purchased $117,000.00 in equipment in 1989 and had also deducted $22,000.00 in personal expenses. The court concluded that the purchase of equipment is a legitimate business expense, but personal expenses are not. This determination was well within its discretion under the guidelines. *Id.* Further, the court found that some of the equipment purchased in 1989 was financed by Greg over several years, and also that Greg had sold $33,750.00 in equipment in that year.

Finally, the court found that Greg financed his farming operation with a $300,-000.00 line of credit, which Greg also used for personal expenses in 1989, such as jewelry, a "big-screen" television set, and several recreational/business trips. This line of credit and various tax advantages afford Greg great economic flexibility.

The court's findings as to the financial condition of Greg and Sandy support the judgment. However as already noted, not only was the financial condition of the parties relevant, but the standard of living that the children would have enjoyed, had Greg and Sandy not separated, was relevant as well. *Beeson, supra,* 538 N.E.2d at 297. The Indiana Child Support Guidelines are predicated on the same assumption. *See* Ind. Child Support Guideline 1, Preface.

In regard to the latter factor, the trial court found that the parties enjoyed a reasonably high standard of living during the marriage. There was testimony in the record indicating that the parties had monthly living expenses of over $6,700.00 per month in 1988, and that the children had "wanted for nothing."

It was appropriate for the trial court to insure, with the child support award, that the children would continue to enjoy a standard of living similar to that they enjoyed before the separation of Greg and Sandy. We find no error. The amount of the weekly child support order was not clearly against the logic and effect of the facts and circumstances before the court.

■ Finally, Greg complains that the modification order placed the entire burden of the children's medical expenses on him, and that this is contrary to Indiana Child Support Guideline 3(E), Commentary. Greg cites the commentary to the effect that 6% of the support amount under the guidelines is deemed to be allocated for health care expenses, and that the costs of extraordinary health expenses should be divided equally between the parents. Therefore, he argues, the medical support obligation imposed solely upon him by the trial court is contrary to law and an abuse of discretion.

The Commentary to Ind. Child Support Guideline 3(E) reads in pertinent part as follows:

"It has been the practice in many courts to apportion between the parents the medical, dental and optical expenses that exceed insurance, usually on an equal basis. The data on which the Guideline schedules are based included a component for ordinary medical expenses. Specifically, 6% (six percent) of the support amount is for health care expense. It is suggested, if an apportionment is made, that the custodial parent absorb a specified amount of expense per occurrence of illness (that is, for one particular illness or injury) before the noncustodial parent is required to contribute."

The foregoing is based on a presupposition that the parents have access to health

insurance for the children. Within that context, the commentary cannot be taken to mean that an award of support under the guidelines necessarily includes a component that is inflexibly ratified for *all* reasonable health expenses, thereby excluding the possibility of creative solutions to the trial court's task of insuring that the health care needs of the children are met. The commentary is meant to assist the trial courts, not to be viewed as an inflexible set of restrictions on its exercise of discretion, particularly where, as here, neither of the parties are employees with ready access to health insurance coverage.

Therefore a trial court may, consistent with an application of the guidelines, vary from the standard practice and, as here, impose an obligation that one parent pay all medical expenses in addition to the child support award. In light of the evidence of the financial circumstances of the parties, complicated by the self-employed status of the parties, the trial court's decision as to medical expenses in this case was not clearly error.

In light of the trial court's findings, the evidence of record and our standard of review, the trial court did not abuse its discretion in modifying child support. Therefore, the order modifying child support was not erroneous.

There being no finding of reversible error, the trial court's determinations are affirmed.

Affirmed.

SHIELDS, J., concurs in result in part and dissents in part with opinion.

RUCKER, J., dissents with opinion.

SHIELDS, Judge, concurring in result in part and dissenting in part.

I concur in result in Judge Hoffman's opinion that Greg's various claims of error in the trial court's judgment dividing the marital estate are without merit. I disagree with Judge Rucker's opinion that judgment must be reversed because the judgment awards Greg more than one-half of the net marital estate. I agree the

award is erroneous; however, Sandy failed to assert cross-error. Therefore, the error is not before this court.

I also concur in result in the affirmance of the trial court's judgment ordering Greg to pay $230 per week in child support. However, I dissent from the affirmance of the trial court's judgment ordering Greg to pay all the children's medical expenses.

As noted by Judge Hoffman, the trial court determined Greg's support obligation within the framework of the Ind. Child Support Guidelines. The Guidelines support amount is based upon the share of the parental income that would have been spent on the child or children if the family were still intact. The assumption is an intact family spends an amount on usual and ordinary health care for the children in the family. The Guidelines have set six percent (6%) of the combined parental income as the amount of that expenditure and have included that amount in the presumptive guideline amount. Any deviation requires a written finding articulating the basis for the deviation. That written finding does not exist here. Hence, to the extent Greg is ordered to pay one hundred percent of the expense of the children's usual and ordinary health care, he is paying twice. Therefore, in my opinion, the trial court's medical expense order is erroneous and that part of the judgment should be reversed and the cause remanded for a redetermination of Greg's obligation for health expenses consistent with the philosophy of the Guidelines. *Grammer v. Grammer* (1991), Ind.App., 566 N.E.2d 1080. In all other aspects, I fully concur in Judge Hoffman's opinion.

I vote to reverse the trial court's judgment only as to the determination Greg shall pay one hundred percent of the children's health expenses. In all other matters, I vote to affirm the judgment.

RUCKER, Judge, dissenting.

I respectfully dissent from that portion of the majority opinion which holds the deviation in the distribution of marital property is insubstantial.

By agreement of the parties the total net worth of the marital estate is $409,710.91. Thus, every 1% deviation from the presumptive equal distribution amounts to a net gain or loss of approximately $8,200.00. The trial court awarded marital assets to Husband valued at $230,680.91 and awarded marital assets to Wife valued at $179,030.00. With all deference to the majority's calculations, my own calculations of the property division using these figures result in a 44% share to Wife and a 56% share to Husband. This 56/44 split represents a deviation of at least 6% and a monetary value which exceeds $50,000.00. While I agree with the majority that "insubstantial deviations from precise mathematical equality will not compel express trial court findings", on the facts before us I cannot agree that the deviation here is insubstantial.

In *In re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, *reh. denied,* the trial court awarded wife $150,818.00 in marital assets and awarded husband $166,797.00 in marital assets (which did not include a $183,765 inheritance). We observed that even absent the inheritance, the trial court's distribution represented a 53% award of the marital assets to husband and a 47% award to wife. This court indicated "While this division is close, it is not equal. The statutory presumption speaks not in terms of approximation, but rather in terms of exactitude." *Id.* at 645. The case was remanded to the trial court with instructions either to follow the statutory presumption of equality or to set forth its rationale for not doing so. In *Euler v. Euler* (1989), Ind.App., 537 N.E.2d 554, we also remanded the case to the trial court with instructions to correct the property division decree. In *Euler* the trial court awarded wife $18,816.00 in marital assets and awarded husband $27,725.00 in marital assets. That distribution represented an award of marital property to the husband of approximately 54% and an award to the wife of approximately 46%. This court indicated "While this disposition is approximately equal, it is not a fifty-fifty split." *Id.* at 556.

In the case before us the trial court awarded husband 56% of the marital property and awarded wife 44%. While I would not characterize this disparity as great, I must observe that the percentage figures and the dollar value are greater than those in both *Davidson* and *Euler.*

The trial court in this case apparently intended an equal division of the parties' marital assets. In its findings the court specifically indicated, among other things, that the total net value of the marital property "should be equally divided between the parties." *Record* at 241. However, the court proceeded to divide the property unequally and failed to set forth its reasons for so doing.

As we noted in *Euler, supra:*

> Although the trial court, in the exercise of its discretion, can divide the marital property unequally, the dissolution decree in this case indicates no reason for straying from the presumption of equality. We believe that Ind.Code § 31-1-11.5-11(c) requires the trial court to set forth the basis for a division of marital property which does not follow the fifty-fifty presumption.

*Id.* at 556-557. Here, neither the dissolution decree nor the trial court's separate findings indicate a reason for straying from the presumption of equality.

I would remand this case to the trial court with instructions to either divide the marital estate equally, or to set forth its rationale for dividing the estate unequally. In all other respects I agree with the majority and would affirm the trial court's judgment.