**Randy A. KINSEY, Appellant–Petitioner,**

v.

**Angela A. KINSEY, Appellee–Respondent.**

**No. 30A01–9304–CV–140.**

Court of Appeals of Indiana,
First District.

Aug. 23, 1993.

Rehearing Denied Oct. 13, 1993.

James W. McNew, Brand & Allen, Greenfield, for appellant-petitioner.

David P. Murphy, Robak & Murphy, Greenfield, for appellee-respondent.

ROBERTSON, Judge.

Randy A. Kinsey (Father) appeals the award of child support in excess of the amount indicated by an application of the

Indiana Child Support Guidelines. The present child support award was entered by the trial court after a trial upon Father's petition for the modification (reduction) of the amount of child support that he had agreed to pay under the settlement agreement which had been merged and incorporated into the decree that had dissolved his marriage to Angela A. Egger Enzmann (Mother). The sole issue on appeal may be restated as whether the trial court abused its discretion in deviating from the guidelines and ordering child support in excess of the guideline amount. We analyze the propriety of an award of child support in excess of the guidelines generally, address the four (4) reasons entered by the trial court in support of the present deviation from the guideline amount, and reverse.

## FACTS

Father and Mother were married on August 1, 1987, and divorced on April 8, 1991. One child, Jack, had been born of the marriage on July 28, 1988. As noted above, the parties resolved their differences by settlement agreement which was merged and incorporated into their divorce decree. The parties agreed to joint legal custody of Jack, with primary physical custody in the Mother. At the time of the divorce, Father had been earning approximately $827.00 per week ($43,000.00 per year) as a partner in a pizza restaurant and Mother did not work outside the home. In the settlement agreement, Father agreed to pay $200.00 per week in child support, an amount substantially in excess of the guideline amount. Additionally, Father agreed to pay Mother $200.00 per month spousal support until she remarried, an event which took place sometime before the trial held on the instant petition.

In July of 1991, Father filed Chapter 7 (personal) Bankruptcy. He had no longer been able to keep up with his own bills along with the high support payments that he had agreed to pay under the settlement agreement. He had encountered various tax liabilities which had required him to relinquish his partnership arrangement in the pizza restaurant. At the time of trial, he was an hourly employee at the pizza restaurant earning $480.00 per week. Despite his financial difficulties, Father has kept up with his support payments and was current at the time of trial. The trial court found that Mother had remarried and had given birth to another child. The trial court imputed earnings of $170.00 per week to the Mother. The parties stipulated that any modification would be effective July 2, 1992.

The trial court found that Father's sharp decline in earnings constituted a substantial and continuing change of circumstances warranting a modification of the amount of his child support obligation. The trial court found that the amount of Father's child support obligation resulting from an application of the guidelines was $80.00 per week. The trial court deviated from the guidelines and ordered Father to pay $140.00 per week in child support. In support of the deviation from the guidelines, the trial court entered the following finding:

10. Deviation from Guideline support is appropriate in this case because (A) The agreement to pay $200.00 per week was part of a total 'financial package' contained in the Settlement Agreement; (B) Husband agreed to the $200.00 per week, in part, to terminate exhaustive discovery concerning his business and to end litigation and related fees; (C) The Guidelines caution that modifications should be avoided which cause drastic alteration in a standard of living; (D) An immediate reduction from $200 to $80 per week would cause an elimination of many discretionary items provided to the child and, thus, cause an alteration in the child's standard of living.

Additional facts are supplied as necessary.

## DECISION

■ At the outset, we note that child support orders, including those entered by agreement, are modifiable. *Brokaw v. Brokaw* (1980), Ind.App., 398 N.E.2d 1385. Although parties are free to bind them-

selves to agreements to pay child support in excess of what the trial court could order if it crafted the award, such agreements are subject to modification upon proper petition. *In Re Marriage of Loeb* (1993), Ind.App., 614 N.E.2d 954.

■ In reviewing a determination of whether a child support obligation should be modified, we will reverse the trial court's decision only for an abuse of discretion from a view of the evidence most favorable to the trial court's determination, and in doing so, we will not reweigh the evidence or substitute our judgment for that of the trial judge. *Drake v. Newman* (1990), Ind.App., 557 N.E.2d 1348, *trans. denied.* A trial court's determination regarding how minor children will be provided for will be disturbed only where an abuse of discretion is clearly shown, that is, when the determination is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences that might be drawn therefrom. *Dahnke v. Dahnke* (1991), Ind. App., 571 N.E.2d 1278, *trans. denied.*

The standard applicable to our review of a trial court's entry of a child support order which deviates from the amount resulting from an application of the guidelines was discussed in *Talarico v. Smithson* (1991), Ind.App., 579 N.E.2d 671, as follows:

The guidelines, which became effective October 1, 1989, provide a rebuttable presumption that the amount of the award which results from the application of the guidelines is the correct amount of child support to be awarded. [Ind.Child Support Guideline 2]; ...

\* \* \* \* \* \*

Trial courts must avoid the pitfall of blind adherence to the computation for support without giving careful consideration to the variables that require a flexible application of the guidelines. However, when a trial court chooses to deviate from the guidelines, it must articulate a sufficient basis to do so. If the court concludes from the evidence in a particular case that the amount of the award reached through application of the guide-

lines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion. Child Supp.G. 3; ...

\* \* \* \* \* \*

These findings need not be especially formal. They must, however, set forth the trial court's reason for deviating from the guidelines' amount so that as a reviewing court we may know the basis for the court's decision.... There are an infinite number of situations that may prompt a trial court to deviate from the guidelines' amount. For illustration only, and not as an exhaustive list, the guideline comments list several examples which include: noncustodial parent provides child care, purchases school clothes or has extraordinary medical expenses for his or her own self.

579 N.E.2d at 672, 673 (Citations to cases omitted). In *Talarico*, the trial court had ordered Father to pay approximately $92.00 per week support when the guideline amount was approximately $117 per week. We found the trial court's findings insufficient to support the deviation, which amounted to less than $25.00 per week, from the guideline amount. 579 N.E.2d at 673.

■ Findings of fact entered by the trial court will be reversed on appeal only if they are clearly erroneous. *Loeb*, 614 N.E.2d 954, 956. The trial court's factual findings will not be found to be clearly erroneous unless the evidence contains no facts or reasonable inferences supporting the findings. *Id.* In determining whether the trial court's findings are clearly erroneous, we will not reweigh the evidence nor determine the credibility of the witnesses and will consider only the evidence on record which supports the judgment and the reasonable inferences which can be drawn from that evidence. *Id.*

■ Indiana child support awards are designed to provide a child as closely as possible with the same standard of living as the child would have enjoyed had the marriage not been dissolved. *McCallister v. McCallister* (1986), Ind.App., 488 N.E.2d 1147.

The "Income Shares Model" was selected for the Indiana Child Support Guidelines because it was perceived as the fairest approach for children based on the premise that children should receive the same proportion of parental income after a dissolution that they would have received if the family had remained intact. Child Supp.G. 1 (Commentary to Income Shares Model). The income shares model is also perceived as being fair to parents because it apportions the cost of children between the parents based on their respective means. *Id.* The guidelines based on the income shares model is consistent with Ind.Code 31–1–11.5–12(a) in that both require the court to consider the financial resources of both parents and the standard of living the child would have enjoyed in an intact family. *Id.*

In many states, the comparison of custodial and noncustodial post-divorce standards of living can provide a justification for deviating from guideline support. Smith, Grounds for Deviation, 10 *Family Advocate*, (Spring, 1988) 22 at 24. By comparing post-divorce standards of living, based on the Bureau of Labor Statistics Revised Equivalence Scale for Estimating Equivalent Incomes or Budget Costs by Family Type (U.S. Department of Labor, B.L.S., Bulletin No. 1570–2, 1968), the Smith article demonstrates that unless additional income becomes available for the post-divorce family, the overall living standards of the post-divorce family will decline. This conclusion supports the common-sense notion that two households are more expensive to maintain than one.[1] The issue then becomes, according to the Smith article, how the decline in the standard of living will be allocated between the custodial and noncustodial households.

■ However, as noted earlier, Indiana law and the Indiana Child Support Guidelines are designed to effect child support orders which provide children as closely as possible with the same standard of living the children would have enjoyed had their families remained intact. Therefore, an award of guideline support allocates the brunt of the over-all post-divorce decline in standard of living to the noncustodial parent. Similarly, an award of child support in excess of the guideline amount serves to leverage the custodial household's standard of living to a level higher than that enjoyed before the divorce by imposing even more downward pressure upon the standard of living of the noncustodial household. The child of a broken home may very well be entitled to be maintained at the same standard of living he enjoyed before his parents' divorce. *See Beeson v. Beeson* (1989), Ind.App., 538 N.E.2d 293. However, we can perceive of no justification for leveraging the custodial household to a standard of living higher than the pre-divorce level by imposing an even lower post-divorce standard of living upon the noncustodial household than would have been effected by an application of the guidelines. Such an award, an award of child support in excess of the guideline amount, is confiscatory.

■ Our examination of the guidelines and the attendant commentary has led us to the conclusion that the guidelines do not contemplate deviations from guideline support in excess of the guideline amount. All the commentary regarding deviations from guideline support pertain to awards of child support in amounts less than would result from an application of the guidelines, e.g., Child Supp.G. 1 (Flexibility Versus the Rebuttable Presumption, 2. *Situations Calling for Deviation*); Child Supp.G. 6 (Deviation From Guideline Amount for Regular Visitation). Moreover, we are not aware of any case involving an award of child support, crafted by the trial court and not by agreement, in excess of the guideline amount. The guidelines already provide

---

1. The Standard of Living Chart in the Smith article indicates that for a divorced couple with one child (as in the case at bar), the custodial parent and child will need 71% of the pre-divorce income to maintain the child's pre-divorce standard of living, while the noncustodial parent will need 46% of the pre-divorce income to maintain his or her pre-divorce standard of living. Obviously, since the sum of the two percentages exceeds 100%, the overall standard of living of the post-divorce family will, in the absence of an additional infusion of income, decline.

for extraordinary circumstances which militate toward a higher child support award. Expenses related to work-related child care, extraordinary health care, and extraordinary education are already taken into consideration in calculating the guideline amount of support. Child Supp.G. 3 E.

A noncustodial parent is perfectly free to voluntarily obligate himself to pay more child support than the trial court could order had it crafted the award. *Loeb*, 614 N.E.2d 954, 957. Similarly, a noncustodial parent may voluntarily contribute more support for his child than the trial court has required him to contribute. *Jenkins v. Jenkins* (1991), Ind.App., 567 N.E.2d 136, 139. However, the authority and/or the discretion of the trial court to craft orders of child support is not without certain limits. *Loeb*, 614 N.E.2d 954, 957. Although there are an infinite number of situations which may justify a deviation from guideline support, *Talarico*, 579 N.E.2d 671, 673; Child Supp.G. 1 (Commentary; Flexibility Versus the Rebuttable Presumption, 2. *Situations Calling for Deviation*), frankly, we cannot contemplate any circumstances not already taken into account by the guideline computation which would justify the trial court's entry of an award of child support in excess of the amount resulting from an application of the guidelines.

### FINDING 10(A)

In the present case, the trial court, in its finding denominated as 10(A), as set out above in the FACTS section, justified the present deviation from guideline support finding "[t]he agreement to pay $200 per week was part of a total 'financial package' contained in the Settlement Agreement; ..."[2] Therefore, it appears that the trial court justified the higher than guideline award of support under the theory that part of the support was actually in the nature of a property settlement. Although Father agreed to pay Mother spousal support for a period after the divorce, Mother has never alleged an entitlement to rehabilitative maintenance under I.C. 31–1–11.5–11(e) based on an incapacitation suffered by her or the parties' son, Jack. Finding 10(A) fails to support the present deviation from guideline support for a variety of reasons.

First of all, in unambiguous contracts, including dissolution agreements, the clear language of the contract controls the interpretation of the parties' intent. *Loeb*, 614 N.E.2d 954, 957. The present dissolution agreement is unambiguous. A whole article of the agreement is devoted to child support with separate sections pertaining to child support payments, college expenses, medical expenses, and the child dependency exemption. Matters pertaining to the property settlement, custody and visitation, spousal support, and insurance are all covered in separate articles within the agreement. The section under the article pertaining to child support which governs the payment of child support reads:

*Section 4.1. Child Support.* The Husband shall continue to pay directly to the Wife, for the use and benefit of the child of the parties, and as child support, the

---

**2.** Due to the deference required by our standard of review regarding the sufficiency of evidence, we relegate to a footnote our observance of the dubious nature of the evidence in the record which arguably supports this finding. The trial court's finding, as discussed above, suggests that the $200.00 per week child support award was, in part, in the nature of a property settlement. Mother, in her brief, appears not to dispute Father's testimony at trial that he agreed to the large child support award because he wished to benefit the child, Jack. (Mother's brief p. 3) Our review of the entire record reveals that the evidence supporting Finding 10(A) reads as follows:

Q: When you negotiated through your lawyer and your wife with her lawyer—the property settlement agreement that contained this $200.00 per week child support—that was part of this whole package wasn't it?
Father: Uh huh.
Q: In other words there were property issues—there were support issues—there were all sorts of issues dealt with in that one agreement?
Father: Right.
Q: And uh—the agreement to pay child support of $200.00 per week—you admit was a part of that total package agreement?
Father: Right.

sum of Two Hundred dollars ($200.00) per week.

The clear language of the contract controls here. The provision of the agreement related to the $200.00 per week child support payment pertains to child support and not the property settlement or some other matter as a matter of law.

Moreover, the record contains an order issued by the United States Bankruptcy Court, Southern District of Indiana, which reads in pertinent part as follows:

> The Court finds that there was a technical violation of the discharge order by Angela Egger [Mother] in pursuing the Motion to Set Aside Decree of Dissolution of Marriage in state court. Ms. Egger was listed as a creditor on the Debtor's [Father's] petition and the debts to Ms. Egger were discharged by the entry of this Court on January 15, 1992. Ms. Egger, in her Motion to Set Aside, stated that the Debtor committed fraud upon her during the dissolution of their marriage. However, Ms. Egger had access to all information during the dissolution proceeding, which occurred prior to the bankruptcy.
>
> Although this Court finds that there was a technical violation of the discharge order, there is no evidence that such conduct was done with the malicious intent necessary to impose sanctions.
>
> Based upon the foregoing, it is ORDERED, ADJUDGED AND DECREED that Angela Egger be and hereby is prohibited from pursuing any debt against the Debtor. It is further ordered that the request for sanctions is hereby denied.

From the plain language of the above order, any non-support debt Father may have owed Mother was discharged in bankruptcy. Any attempt by Mother to obtain a larger property settlement out of the divorce under the guise of a higher than guideline child support award constitutes a violation of the bankruptcy court's order.

For the above reasons, Finding 10(A) is clearly erroneous and insufficient to rebut the presumption of the correctness of the guideline amount of support. Therefore, the trial court's deviation from the guideline amount, based on Finding 10(A), constitutes an abuse of discretion.

### FINDING 10(B)

The trial court's justification for deviating from guideline support denominated as 10(B) reads as follows: "Husband agreed to the $200 per week, in part, to terminate exhaustive discovery concerning his business and to end litigation and related fees; . . ." Our analysis of Finding 10(A) above applies with equal force here. Any additional property interest Mother may have had in Father's former pizza restaurant partnership arrangement was extinguished by the settlement agreement merged and incorporated into the dissolution decree and/or Father's bankruptcy.

Moreover, the Indiana Dissolution of Marriage Act expressly encourages the resolution of divorcing couples' differences by agreement. *Loeb*, 614 N.E.2d 954, 956. The goal of terminating discovery, putting an end to litigation and the expenses related thereto is an appropriate motivation for entering into a settlement agreement. Therefore, we believe it was inappropriate for the trial court to place Father in an inferior position on his petition to modify the child support order simply because he had agreed to pay a higher than guideline amount of child support rather than putting the issue of child support to trial and forcing the trial court to craft an award.[3] This is not the situation experienced in *Loeb*, 614 N.E.2d 954, where the Father wished to be relieved of the child support he had agreed to pay under the settlement agreement merged and incorporated in the divorce decree even though he had not filed a petition to modify or terminate the support order. Finding 10(B) is contrary to Indiana's policy favoring dissolution settlement agreements because it pe-

---

**3.** Incidentally, as we have concluded herein, we cannot contemplate circumstances under which the trial court could have entered the order agreed to by the Father, an award in excess of the amount resulting from an application of the guidelines.

nalizes Father for entering into such an agreement.

For the above reasons, Finding 10(B) is clearly erroneous and insufficient to rebut the presumption of the correctness of the guideline amount of support. Therefore, the trial court's deviation from the guideline amount, based on Finding 10(B), constitutes an abuse of discretion.

## FINDING 10(C)

■ Finding 10(C) reads: "[t]he guidelines caution that modifications should be avoided which cause drastic alteration in a standard of living; ..." Mother concedes that the provisions in the guidelines alluded to by the trial court pertain only to increases in child support, not to reductions, citing the commentary to Child Supp.G. 4. (Mother's brief p. 17) The commentary to Child Supp.G. 4 reads:

> If the amount of support computed at the time of modification is significantly higher than that previously ordered and would require a drastic reduction in the obligor's standard of living, consideration may be given to phasing in the additional support. This approach should allow the obligor time to make adjustments in his or her standard of living. Again, it is not the intent of the Guidelines to drive obligors into noncompliance by reducing their spendable income below subsistence level.

Again, the guideline commentary appears to indicate that the guidelines do not contemplate that child support orders will be fixed in excess of the amount resulting from an application of the guidelines.

As noted above, an award of child support in excess of the guideline amount leverages the custodial household to a standard of living higher than would have been expected had the marriage remained intact. The policy advanced by the "phasing in" of a modification in support is not present under the instant circumstances where the modification sought to bring an artificially high order back towards the guideline amount. There is less hardship involved in the custodial households' move down from an artificially high standard of living (one higher than the pre-divorce level) to the level indicated by an application of the guidelines (the level that would have been expected had the marriage remained intact) than there is for the noncustodial household's move to a level below the the pre-divorce level resulting from an increase in the support obligation.

For the above reasons, Finding 10(C) is clearly erroneous and insufficient to rebut the presumption of the correctness of the guideline amount of support. Therefore, the trial court's deviation from the guideline amount, based on Finding 10(C), constitutes an abuse of discretion.

## FINDING 10(D)

Finding 10(D) reads as follows: "[a]n immediate reduction from $200 to $80 per week would cause an elimination of many discretionary items provided to the child and, thus, cause an alteration in the child's standard of living." The accuracy of this finding is beyond dispute and is supported by overwhelming evidence. This should come as no surprise as it is merely a statement of the obvious: an application of reality under the present circumstances. A decline in a child's standard of living is inevitable (absent an additional infusion of income) when one of his parent's income declines as sharply as Father's has in the present case (from $827.00 per week to $480.00 per week).

■ As noted above, a child support order is to be crafted such that the child will, as closely as possible, experience the same standard of living he would have had the marriage remained intact. *McCallister*, 488 N.E.2d 1147. In crafting an award of child support, the trial court shall consider the financial resources and needs of the noncustodial parent. I.C. 31–1–11.5–12(a)(4). Obviously, had the marriage remained intact, the child's standard of living would have been adversely affected by the decline in Father's income. Just as a divorce does not entitle a child to be supported at a level higher than would have been expected had the marriage remained intact given a constant pre/post-divorce in-

come; a divorce does not entitle a child to be supported at the pre-divorce level regardless of the financial misfortunes of his parents.

Finding 10(D) is insufficient to rebut the presumption of the correctness of the guideline amount of support. Therefore, the trial court's deviation from the guideline amount, based on Finding 10(D), constitutes an abuse of discretion.

## CONCLUSION

We cannot contemplate any circumstances which would justify a trial court's award of child support in excess of the amount resulting from an application of the guidelines. Moreover, the trial court's decision in the present case to order an amount of child support in excess of the guideline amount constitutes an abuse of discretion.

Father has never requested that his child support obligation be less than the amount indicated by an application of the guidelines. The parties stipulated that any modification would be effective July 2, 1992. Therefore, we reverse and remand with instructions that the trial court enter the guideline amount of support, $80.00 per week, retroactive to July 2, 1992.

Judgment reversed.

BAKER and RUCKER, JJ., concur.